**DATA CONCEPTS, INC., a Tennessee corporation, Plaintiff–Appellant,**

v.

**DIGITAL CONSULTING, INC., a Massachusetts corporation, Defendant–Appellee.**

**No. 97–5802.**

United States Court of Appeals, Sixth Circuit.

Submitted June 18, 1998.

Decided Aug. 5, 1998.

BOGGS, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. MERRITT, J. (pp. 627–628), delivered a separate concurring opinion.

BOGGS, Circuit Judge.

Appellant, Data Concepts, Inc. ("Data"), sued Appellee, Digital Consulting, Inc. ("Digital"), and Network Solutions, Inc. ("NSI") to enjoin NSI from reassigning to Digital the Internet address that Data was using, "DCI.COM." Data also sought a declaratory judgment that its Internet address was its unregistered trademark and that such use of that unregistered trademark did not infringe on Digital's registered trademark. Digital counterclaimed, alleging trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114, violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125, dilution of a mark pursuant to Tenn.Code Ann. section 47–25–512, and common law unfair competition. Digital also requested an injunction against Data's use of the "DCI.COM" Internet address.

Data and Digital each filed motions for summary judgment on their respective claims. The motions were referred to a magistrate judge, who issued a report and recommendation ("R & R") recommending that the district court deny Data's motion and grant Digital's motion to enjoin Data's use of the "DCI.COM" Internet address and find that Data had infringed on Digital's registered trademark. The district court adopted the magistrate judge's R & R. Data filed a timely notice of appeal.

Walter H. Crouch (briefed), James W. White (briefed), E. Andrew Norwood (briefed), Waller, Lansden, Dortch & Davis, Nashville, Tennessee, for Defendant–Appellant.

Charles G. Walker (briefed), Scott K. Haight (briefed), Baker, Donelson, Bearman & Caldwell, Memphis, Tennessee, for Defendant–Appellee.

Before: MERRITT, BOGGS, and SUHRHEINRICH, Circuit Judges.

I

A. *The Parties and Their Dispute*

Data is a Tennessee corporation with its principal place of business in Nashville, Tennessee. Data provides performance software for data management and process control. In 1982, Data began using the stylized mark, which is allegedly comprised of the letters "d," "c," and "i" in lower case. When Data started transacting business over the Internet in 1993, it registered the Internet address "DCI.COM" with NSI.

Digital is a Massachusetts corporation, with its principal place of business in Andover, Massachusetts. Digital provides consulting and training related to database management, software development, computer networks, mobile computing, and Internet and world wide web technologies. In 1987, Digital obtained a federal trademark registration for the mark "DCI." Digital also conducts business on the Internet through the Internet address "DCIEXPO.COM."

NSI is a District of Columbia corporation operating out of Herndon, Virginia. All electronic mail addresses for the Internet must be registered with NSI. In April 1996, Data received a letter from NSI stating that Digital had complained to NSI about allowing Data to use the Internet address "DCI.COM," because Digital claimed that this address infringed on Digital's registered mark DCI. In this letter, NSI informed Data that under the NSI domain name policy, Data had the following options: (1) it could retain use of "DCI.COM" if it could provide a copy of a valid federally-registered trademark or service mark that was the same as the domain name; (2) it could relinquish the "DCI.COM" address to Digital and get a new one; or (3) "DCI.COM" could be placed on hold so that no one could use it until the dispute was resolved. The present action followed. The parties agreed to dismiss NSI for purposes of this appeal.

B. *The District Court's Ruling*

In its opinion adopting the conclusion of the magistrate judge's R & R, the district court held that "the registered trademark of Digital is superior to the unregistered trademark of Data, and that Data's use of the 'DCI.COM' Internet address infringes upon Digital's registered trademark." The district court also ruled that "since Data Concepts' Internet address is identical to Digital Consulting's trademark, Data Concepts is precluded from using Digital Consulting's trademark in its Internet address." The district court found that "there is a likely confusion of sponsorship that Data Concepts' initial Internet address is associated with Digital Consulting." Thus, Data was "permanently enjoined from operating or suffering the operation of the address of DCI.COM on the Internet."

## II

On appeal, Data argues that the district court should not have granted Digital summary judgment and that the district court erred by concluding that Digital's mark is superior to Data's unregistered stylized mark. Data claims it is the senior user of the mark "DCI" because it used the stylized mark, which allegedly consists of the lower case letters "d," "c," and "i," before Digital registered the mark "DCI," which consists of the capital letters "D," "C," and "I." Data also contends that the district court did not properly apply the eight factors used to determine likelihood of consumer confusion.

A. *Data is not a Senior User*

■ Since Digital registered the "DCI" mark in 1987, Data's claim that it is the senior user of the mark "DCI" relies on its ability to "tack" its prior use of the mark from 1982 until 1993 onto its use of the "DCI" mark as part of its Internet address beginning in 1993. The use of an earlier mark can be tacked onto the use of a subsequent mark only if the previously used mark is "the legal equivalent of the mark in question or indistinguishable therefrom" such that consumers "consider both as the same mark." *Van Dyne–Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed.Cir. 1991). Furthermore, tacking should be permitted "only in rare circumstances." *Id.* at 1160.

■ Whether a later mark is the legal equivalent of an earlier one is a question of law. *Id.* at 1159. Legal equivalence for tacking purposes does not exist simply because the two marks a party seeks to tack are "confusingly similar." *Ibid.* Rather, the marks sought to be tacked "must create 'the same continuing commercial impression.'" *Ibid.* A determination of legal equivalence may be based on "the visual or aural appearance of the marks themselves." *Ibid.*

■ In view of cases in which legal equivalence was held not to exist, we cannot find that Data's mark is a legal equivalent of

"DCI." To begin with, the two marks do not look alike. It does not matter that Data's unregistered stylized mark allegedly consists of the letters "d," "c," and "i." Courts regularly reject efforts to tack the use of two marks that are much more similar. For example, the mark "CLOTHES THAT WORK" was held, as a matter of law, not to be the legal equivalent for tacking purposes of "CLOTHES THAT WORK FOR THE WORK YOU DO." *Id.* at 1160. In another case, the marks "Pro–Kut" and "Pro–Cuts" were held not to be legal equivalents that could be tacked. *Pro–Cuts v. Schilz–Price Enters., Inc.*, 27 USPQ2d 1224, 1993 WL 266611 (TTAB 1993). Thus, we hold that Data's prior use of its unregistered stylized mark cannot be tacked onto its subsequent use of the "DCI" mark and that Data did not begin using the mark "DCI" until it incorporated the mark into its Internet address in 1993. Since Digital registered the mark "DCI" in 1987, Data is not a senior user of the mark.

### B. *Likelihood of Confusion*

Data's second argument on appeal is that the district court should not have granted Digital summary judgment on its infringement claim. According to Data, the district court erroneously concluded that Data's use of the DCI mark in its Internet address created a likelihood of confusion as a matter of law. Data contends that the district court did not consider all of the factors that go into determining whether a likelihood of confusion exists and that the district court improperly applied the likelihood of confusion factors it did consider. These alleged errors in the district court's analysis, according to Data, caused the district court to conclude improperly that there is no triable issue of fact as to likelihood of confusion and, thus, as to the fact of infringement.

■ Whether a likelihood of confusion exists is a mixed question of law and fact. *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 570 (6th Cir.1987). This court has enumerated eight factors that are to be considered to determine whether a likelihood of confusion exists. The eight factors are: (1) the strength of the plaintiff's

mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the defendant's intent in selecting the mark; and (8) the likelihood of the expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 648 (6th Cir.1982). "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely .... and not all of these factors may be particularly helpful in any given case." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir.1991). If the facts relevant to the applicable factors are contested, factual findings must be made with respect to each of these factors and these findings are subject to review for clear error. *Little Caesar*, 834 F.2d at 570. However, the balancing of these findings to determine the ultimate issue of likelihood of confusion is a question of law. *Ibid.*

■ To defeat a motion for summary judgment "in a case [such as this one] where the likelihood of confusion is the dispositive issue, a nonmoving party must establish, through pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, that there are genuine factual disputes concerning those of the [eight] factors which may be material in the context of the specific case" *Homeowners*, 931 F.2d at 1107. In determining whether a genuine issue of material fact exists, a court must review the evidence in a light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The magistrate judge considered seven of the likelihood of confusion factors in his R & R. He determined that the following factors weighed in favor of finding that a likelihood of confusion existed: strength of mark, similarity of the marks, marketing channels, and intent in the selection of the mark. The likely degree of purchaser care factor was deemed to cut against finding a likelihood of confusion. And the evidence of actual confusion and relatedness of services factors were determined to be inconclusive.

The magistrate judge did not separately consider the factor of the likelihood of expansion, but did discuss it in his analysis of marketing channels. The magistrate further determined that, on balance, these factors tipped the scales, as a matter of law, in favor of finding a likelihood of confusion. The five points [1] upon which the district court relied in affirming the magistrate judge's determination that a likelihood of confusion existed and that Digital's motion for summary judgment on the infringement claim should be granted were clearly drawn from the magistrate judge's analysis. Accordingly, our analysis will focus on the magistrate judge's discussion of the likelihood of confusion factors.

### 1. Strength of the Mark

■■■■ We agree with Data that the magistrate judge's (and thus the district court's) assessment of the strength of the mark was flawed because he did not properly assess the significance of evidence of numerous other instances of third-party use of the DCI mark. A mark that has been registered and uncontested for five years, as Digital's was, is entitled to a presumption that it is a strong mark. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir.1991). However, a mark is weakened outside of the context in which it is used if there is third-party use of the mark. *Ibid.* This court cannot evaluate the magistrate judge's determination that these other marks were different in ways that make them distinctive from Digital's mark because the other marks are not in the record. However, there is an affidavit by the president of Data that he found over ninety web sites incorporating DCI into their domain names.[2] Nei-

ther the magistrate judge nor the district court addressed this evidence and whether it overcame the presumption that DCI was a strong mark. Therefore, the analysis of the strength of the mark was inadequate. *See Homeowners*, 931 F.2d at 1108. (finding district court analysis of strength of mark insufficient because it failed to consider probative evidence weakening mark).

### 2. Relatedness of Services

■■■■ We also find that the magistrate judge's analysis of the relatedness of services offered by Data and Digital was premised on the erroneous factual determination that both companies are "involved in database systems and development of software." Data correctly asserts that there is no support in the record for finding that Digital is involved in the development of software. In its answer and counterclaim, Digital expressly denied that it "offers software for business management." The president of Digital stated in his affidavit that Digital provides "*educational services* in the fields of database management systems, software productivity, application development, client/server technologies, and distributed computing ...." (emphasis added). His affidavit says nothing about software development. Furthermore, the record contains no evidence that Data is involved in database systems in any way other than that it "suppl[ies] computer software for data management." Accordingly, we hold that the magistrate judge's analysis of the relatedness of services factor was premised on mistaken factual determinations. This factor must be re-evaluated in light of evidence in the record indicating that Digital is not involved in software development and

---

**1.** (1) Digital Consulting's registered trademark is uncontestable as it has been registered and uncontested for over five years; (2) Data Concepts and Digital Consulting are both involved in database systems and the development of software; (3) the practice of "surfing the Net" gives rise to the prospect that Data Concepts' use of Digital Consulting's registered trademark as its Internet domain name would cause confusion; (4) both businesses use the Internet to market their products; and (5) Digital Consulting's trademark was already registered at the time Data Concepts chose its Internet address.
(JA 94).

**2.** Although the affidavit does not list any examples, our own research discloses many Internet addresses incorporating "DCI." Examples include: "DCI.DE," a German-language site for commerce and industry; "DCISONGS," a site for drum corps international, which contains excellent information about drum corps history and music; "DCI–US," the site of a company that specializes in performance PC board design; "DCICLRC," the constrained and unconstrained testing environment site; and "DCIMARKETING," the site for a Milwaukee-based marketing firm.

that Data is not involved in database systems beyond providing software for them.

### 3. Similarity of Marks

■ The record leads us to conclude that the magistrate judge's analysis of this issue was also flawed. This is because the magistrate judge appears to have done nothing more than a "side-by-side comparison" of the marks. In *Homeowners*, 931 F.2d at 1109, this court stated that a side-by-side comparison "is not the test" for similarity of marks. Rather we said that the marks "must be viewed in their entirety and in context [and a] court must determine, in light of what occurs in the marketplace, whether the mark will be confusing to the public when singly presented." *Ibid.* It does not appear that such an analysis was undertaken in this case.

### 4. Evidence of Actual Confusion

■ The magistrate judge drew no conclusion as to this factor. Review of the record indicates no actual evidence on this issue. However, we wish to clarify that Data's contention that the absence of past confusion indicates that there is no likelihood of future confusion has no merit. In *Wynn*, 943 F.2d at 601–02, this court explained that the lack of evidence of actual confusion is not significant unless the circumstances indicated that such evidence should have been available. This does not appear to be such a case. Little time elapsed from the date Data started using the DCI mark as part of its web address and the instigation of this litigation. Thus, there was only a brief period of time during which consumers had the opportunity to be confused by Data's use of this Internet address before the court considered this issue. This is not a case where the complained-of use occurred over a long period of time and the lack of complaints about actual confusion can be viewed as implying that consumers are not in fact confused.

### 5. Likely Degree of Purchaser Care

■ Data does not contest the magistrate judge's finding that the sophistication of Digital's customers and the cost of Digital's services cause this factor to weigh heavily against finding a likelihood of confusion. Digital, however, points out a problem with the magistrate judge's analysis of this factor. The problem is that the magistrate judge considered only whether a buyer might accidentally purchase Data's products and services because they mistakenly believed they are Digital's products and services.

Our case law makes clear that a court must also consider whether a potential buyer might mistakenly believe that the software sold by Data through its "DCI.COM" Internet address is affiliated with Digital. *See Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir.1996) (explaining court must inquire into both whether buyers would accidentally purchase other company's product and whether sophisticated purchaser might be confused as to affiliation). Since the analysis of this issue was incomplete and may not favor Data as strongly as the magistrate judge indicated, we cannot accept his analysis of this factor.

### 6. Data's Intent in Selecting the Mark

We also find merit in Data's argument that the magistrate judge erred by inferring that Data intentionally selected DCI's mark. Data contends that it was the senior user based on its prior use of its stylized mark incorporating the letters d, c, and i. It also claims that, even if it was not the senior user, it was unaware of Digital and its registration of the DCI mark. Digital asserts that Data's failure to investigate whether there were any registered marks using DCI is circumstantial evidence of Data's intent to appropriate Digital's mark for its own advantage.

■ There is no direct evidence in the record that Data intentionally selected the DCI mark as part of its Internet address in an effort to appropriate the goodwill of Digital's mark. Intent can, however, be established by circumstantial evidence. *Champions*, 78 F.3d at 1121. For example, in *Champions*, evidence indicating that the junior user of a mark was aware of the senior user's prior use of the mark supported "an inference of intentional infringement." *Ibid.* There is no such evidence in this case. The record indicates that Data really was unaware of Digital at the time it decided to use

DCI as part of its Internet address. Such evidence usually militates in favor of finding no intent, which weighs against a finding of a likelihood of confusion. *See Little Caesar,* 834 F.2d at 572 ("[T]here is no evidence that [defendant] even had actual knowledge of the existence of Little Caesar Enterprises, much less that he had any larcenous intent."). Accordingly, we cannot accept the magistrate judge's analysis of this factor either.

### 7. Other Factors

Neither the parties' arguments or our own review indicates any problems with the magistrate judge's analysis of marketing channels. The magistrate judge's analysis of the likelihood of expansion factor was quite cursory. It appears to us that this was because, at this juncture in the litigation, it is not clear that this factor is of any great relevance. If the parties produce evidence indicating that this factor is more significant than it now appears to be, they should be permitted to present this evidence to the trier of fact.

### III

In summary, the magistrate judge's analysis of several of the likelihood of confusion factors was clearly inadequate. Because of these errors and shortcomings in the magistrate judge's analysis (upon which the district court apparently relied), it cannot be said that a likelihood of confusion existed as a matter of law and that Digital was entitled to summary judgment on its infringement claim. *See Homeowners Group, Inc. v. Home Marketing Specialists, Inc.,* 931 F.2d 1100, 1112 (6th Cir.1991). When the likelihood of confusion factors are properly analyzed, and the record is viewed in a light most favorable to Data, this case appears to present too close a question to decide as a matter of law.

### IV

For the forgoing reasons we **AFFIRM** in part, and **REVERSE** in part the judgment of the district court. We affirm the denial of Data's motion for summary judgment and the rejection of Data's claim that it was the senior user of the "DCI" mark. We reverse the district court's grant of Digital's motion for summary judgment on its counterclaim for infringement based on the holding that a likelihood of confusion exists as a matter of law. We conclude that a triable issue of fact exists on the issue of likelihood of confusion and remand the case for proceedings consistent with this opinion.

MERRITT, Circuit Judge, concurring.

I concur in Judge Boggs's well reasoned opinion, but I believe that there is a serious question regarding whether Data Concepts' use of the dci.com domain name constituted use of a trademark in the first place. As a leading commentator recently observed, "The question is sometimes asked: 'Is a domain name a trademark?' The correct answer is: 'A domain name can become a trademark if it is used as a trademark.'" 1 J. McCarthy, *Trademarks and Unfair Competition* § 7:17.1 (4th ed.1998). Courts and other commentators have generally recognized that an Internet domain name can be used for both trademark and non-trademark purposes. *See, e.g.,* 2 Jerome Gilson & Jeffrey M. Samuels, *Trademark Protection and Practice,* §§ 5.11[3] & 5.11[5] (1997) (distinguishing the technical use of domain names from the trademark use of domain names to identify goods and services); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F.Supp. 949, 956 (C.D.Cal.1997). When a domain name is used only to indicate an address on the Internet and not to identify the source of specific goods and services, the name is not functioning as a trademark. *See Lockheed,* 985 F.Supp. at 956; 1 McCarthy § 7:176.1, at 7–24.

Although Data Concepts appears to concede that its use of letters in the domain name constituted trade use of the mark in connection with the sale of its goods, it is not clear that this is the case. The record is not well developed on how exactly it used the dci.com Internet address. It is undisputed that Data Concepts did not use the dci.com domain name to establish a "web site" to advertise and sell its services. At the very least, Data Concepts used the domain name as a means for sending and receiving e-mail.

The only evidence in the record regarding the extent of Data Concepts' use of the dci.com domain name is the affidavit the company's CEO, Terry Woodson, which asserts generally that "DCI now conducts a significant portion of its business through the Internet using the Internet address 'DCI.COM'. Last year, business generated through use of our Internet address resulted in revenues in excess of $80,000 for the company." J.A. at 98–99. The affidavit also states that Data Concepts communicates with some of its clients solely through the Internet. *Id.*

Data Concepts' vague assertion that it received customer inquiries through the address that resulted in revenue is not enough to establish that its use of dci.com domain name constituted "use" of the DCI trademark. For instance, there is no evidence in the record indicating whether Data Concepts disseminated advertisements of its services displaying the dci.com address or whether the company's customers or employees simply passed the dci.com address along to potential customers in the same way someone might give out a telephone number. *See* 1 McCarthy § 7:17.1 (domain names, like telephone numbers, street addresses, and radio station call letters, which permit one to locate and communicate with a place or a person, do not, without more, function as trademarks). Thus, it is unclear whether Data Concepts used the dci.com domain name merely as a means of communication or whether the company used the name to identify its goods and services. Since resolution of this question could dispose of the case, I would instruct the District Court to consider this matter on remand.