**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ONE INDUSTRIES, LLC, a limited
liability company,
      *Plaintiff-counter-defendant-*
                    *Appellee,*

            v.

JIM O'NEAL DISTRIBUTING, INC., a
corporation,
      *Defendant-counter-claim-3rd-*
        *party-plaintiff-Appellant,*

            v.

MARC BLANCHARD; LUDOVIC
BOINNARD,
  *Third-party-defendants-Appellees.*

No. 08-55316
D.C. No.
CV-06-01133-JAH

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
May 4, 2009—Pasadena, California

Filed August 24, 2009

Before: John T. Noonan, Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge O'Scannlain;
Partial Concurrence and Partial Dissent by Judge Graber

11595

## COUNSEL

R. Joseph Trojan, Trojan Law Offices, Beverly Hills, California, argued the cause for Jim O'Neal Distributing, Inc., and filed the briefs.

Jonathan Hangartner, X-Patents, APC, La Jolla, California, argued the cause for One Industries, LLC, Marc Blanchard, and Ludovic Boinnard and filed the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We venture into the world of motocross racing to determine whether federal trademark law protects a motorcycle apparel company's use of a stylized "O" on its products.

I

A

Motocross is a popular form of off-road, rough terrain motorcycle racing. Jim O'Neal Distributing, Inc. ("O'Neal"), is a leader in the industry. Founded in 1970, O'Neal equips riders with boots, jerseys, helmets, and other racing indispensables. By 1998, O'Neal had captured 17.5% of the market for motocross apparel and helmets — about the same proportion, according to the record, as Ford's share of the 2006 U.S. car market.

Though motocross racing is all about dirt and dust, O'Neal's success apparently also depended on fashion. In 1991, O'Neal began decorating its products with a stylized O followed by an apostrophe (the "O' mark"). Over the years, O'Neal experimented with different versions of the O' mark. In 1992, O'Neal flattened the original, creating a compressed mark. A year later, O'Neal created a slanted mark. In 1997, O'Neal developed a thicker, boxier O' mark with rounded corners (the "Rounded O' mark"). Finally, in 2003, O'Neal adopted the current O' mark, which abandons the rounded corners of the 1997 mark in favor of an angular approach (the "Angular O' mark"). The graphical timeline below shows the evolution of O'Neal's O' mark:



(1991)        (1992)        (1993)        (1997)        (2003)

O'Neal's products also often feature a stylized "O'NEAL" (the "O'NEAL mark"):



Compared to O'Neal, One Industries, LLC, is a newcomer to the motocross world. Founded in 1997 by a graphic designer, One Industries began by selling stickers and decals. By 2003, One Industries had added helmets and clothing to its product lines, putting it in direct competition with O'Neal.

Style is also a pillar of One Industries' success. In 1999, One Industries developed the "One Icon," which it describes as two interlacing number ones:



Also in 1999, One Industries created the "One Angular" mark:



Like O'Neal, One Industries now uses the One Icon and the One Angular mark on motorcycle-related apparel and head-gear.

B

As One Industries grew from a decal and sticker producer to a full-fledged motocross apparel company, it attracted

O'Neal's unwelcome eye. In 2006, O'Neal accused One Industries of infringing the 2003 Angular O' mark and the O'NEAL mark. O'Neal asserted that the O' mark had been in use "for over a decade," and the "O'NEAL" mark had been in use "for over thirty-five years."

One Industries did not give an inch, denying that its One Icon and One Angular marks infringed O'Neal's trademarks. One Industries accused O'Neal of falsely representing that its O' mark had been in use for over a decade, pointing out that the Angular O' mark was created in 2003. According to One Industries, the One Icon and One Angular marks, which were created and registered in 1999, are senior to the Angular O' mark. Two days later O'Neal replied, reiterating its position that One Industries' marks infringed the Angular O' mark and the O'NEAL mark.

One Industries subsequently sought a declaratory judgment in the United States District Court for the Southern District of California that the One Icon and One Angular marks did not infringe O'Neal's trademarks. O'Neal, in its answer, asserted six counterclaims for trademark infringement of the O' and O'NEAL marks, trade dress infringement, and unfair competition under California state law. O'Neal also brought a third-party complaint against One Industries' founders, alleging trademark infringement and trade dress infringement.

Before discovery, One Industries moved for a more definite statement under Federal Rule of Civil Procedure 12(e), claiming that O'Neal's complaint did not identify the particular iteration of its O' mark that was allegedly infringed. In opposition, O'Neal contended that "[t]here is no need for a more definite statement" because "O'Neal has used a singular O' mark that has changed slightly over the years. . . . [O]nly one mark is at issue in O'Neal's trademark infringement claim."

The district court granted One Industries' motion for a more definite statement. It reasoned that "two of the marks

alleged to be one have been registered separately and the marks presented appear to this Court to be more than just slightly different." O'Neal accordingly amended its answer and counterclaims to assert infringement of the 1997 Rounded O' mark. Later, the district court granted summary judgment to One Industries on all claims. O'Neal timely appealed.

## II

O'Neal primarily contends that the district court erred by refusing to "tack" the different versions of the O' mark dating back to 1991. According to O'Neal, each iteration of the O' mark constituted a continuation of the same mark rather than a creation of a new mark. Tacking matters because One Industries first used the One Icon in 1999 — *after* O'Neal developed the 1997 Rounded O' mark but *before* O'Neal created the 2003 Angular O' mark. It is a cardinal principle of federal trademark law that the party who uses the mark first gets priority. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) ("It is axiomatic . . . that the standard test of ownership is priority of use. . . . [T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services." (internal quotation marks omitted)). Thus, if the Rounded and Angular O' marks are the same mark, then the district court should have compared the One Icon with the 2003 Angular O' mark; if the marks are different, however, then the district court correctly compared the One Icon with the 1997 Rounded O' mark.

## A

Before we reach the merits, we must confront dueling procedural arguments.

[1] At the outset, One Industries insists that O'Neal forfeited the tacking argument by failing to raise it in the district court. A party normally may not press an argument on appeal

that it failed to raise in the district court. *See Allen v. Ornoski*, 435 F.3d 946, 960 (9th Cir. 2006) ("[A] party cannot treat the district court as a mere ill-placed bunker to be circumvented on his way to this court where he will actually engage his opponents." (alteration in original) (internal quotation marks omitted)).

One Industries emphasizes that O'Neal's amended counterclaims, which alleged infringement of the Rounded O' mark, did not raise the tacking issue. It also notes that the district court's summary judgment order did not address tacking. In response, O'Neal contends that the district court rejected the tacking argument in its order granting One Industries' motion for a more definite statement. In O'Neal's view, the law of the case doctrine precluded it from raising tacking again during the summary judgment proceedings. O'Neal also argues that "this entire case has been predicated from the beginning on the doctrine of tacking." It points to the original exchange of litigation threats with One Industries in which the parties disputed whether O'Neal had used the Angular O' mark for "over a decade." Tellingly, however, O'Neal's Notice of Appeal refers only to the summary judgment order, not to the order granting the motion for a more definite statement.

**[2]** After picking through the tangled procedural posture of this case, we are satisfied that O'Neal did not forfeit its tacking claim. Tacking was fleshed out during the proceedings surrounding the motion for a more definite statement. While O'Neal did not use the word "tack" in its opposition to the motion for a more definite statement, it raised the essence of the claim:

> O'Neal objects to Boinnard and Blanchard's attempt to characterize O'Neal's O' mark as "five distinct" marks. O'Neal plainly lays out the evolution and continued use of the O' mark since its inception in its Third-Party Complaint . . . . Consequently, no further statement is necessary concerning

> O'Neal's infringement claim of the O' mark, given the extremely well-settled law that a party is entitled to modify a mark over the years if the change neither creates a new mark nor changes the commercial impression created by the old mark, especially where the only change concerned is lettering style.

In addition, the district court expressly considered and rejected such argument: "This Court is unpersuaded by O'Neal's claim that it uses only one mark that has been slightly altered over the years because two of the marks alleged to be one have been registered separately and the marks presented appear to this Court to be more than just slightly different." Thus, the district court had an adequate opportunity to rule, and actually did rule, on the tacking issue, making it the "law of the case" and not subject to reopening. *See Agostini v. Felton*, 521 U.S. 203, 236 (1997) ("Under [the law of the case] doctrine, a court should not reopen issues decided in earlier stages of the same litigation."). This is hardly a case in which a party treated the district court "as a mere ill-placed bunker to be circumvented" on his way to the appellate court. *Allen*, 435 F.3d at 960.

**[3]** Though we are persuaded that O'Neal raised the tacking issue in the district court, there remains the problem of O'Neal's Notice of Appeal. Federal Rule of Appellate Procedure 3 requires a party's Notice of Appeal to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). It is undisputed that O'Neal's Notice of Appeal references only the summary judgment order, not the order granting the motion for a more definite statement.

**[4]** Because we construe Rule 3(c) liberally, this omission is not fatal. Just this year, we held that a mistake in a notice of appeal does not necessarily doom a case:

> [A] mistake in designating the judgment appealed from should not bar appeal as long as the intent to

appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake. In determining whether "intent" and "prejudice" are present, we apply a two-part test: first, whether the affected party had notice of the issue on appeal; and, second, whether the affected party had an opportunity to fully brief the issue.

*Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1481 (9th Cir. 1986).

[5] The tacking issue was central to the case before and during litigation and was discussed extensively in O'Neal's opening brief on appeal. Accordingly, the appellee was "not prejudiced by the mistake" and "had notice of the issue on appeal." *Ahlmeyer*, 555 F.3d at 1055. O'Neal's discussion of tacking in its opening brief also displays an "intent to appeal a specific judgment." *Id.* In addition, One Industries "had an opportunity to fully brief the issue" and did so. *Id.* This case does not involve an attempt to sandbag the opposing party with a new issue presented for the first time on appeal. Accordingly, we conclude that O'Neal did not forfeit the tacking claim.

B

Satisfied that the tacking issue was preserved for appeal, we turn to O'Neal's procedural challenge. It contends that the district court improperly resolved the issue on a Rule 12(e) motion for a more definite statement rather than in the context of a summary judgment motion. According to O'Neal, because One Industries' Rule 12(e) motion occurred early in the litigation, "discovery was not yet completed and O'Neal had no opportunity to demonstrate that the evolving versions of the O' mark created the same, continuing commercial impression to consumers."

**[6]** We sympathize with O'Neal's complaint about the appropriateness of resolving this issue on a Rule 12(e) motion. Because tacking requires a highly fact-sensitive inquiry, the better practice is to resolve it on summary judgment, after full discovery. Here, by contrast, the tacking ruling was locked inside an order granting a motion for a more definite statement. We encourage district courts to avoid resolving merits issues, especially fact-sensitive questions, on Rule 12(e) motions. Preserving such questions until later in the litigation will help prevent claims like this one, where the losing party complains that it never had a chance to make its case.

**[7]** Nevertheless, in this case, we are persuaded that there is no reversible error. While O'Neal was on notice that tacking was at issue on the Rule 12(e) motion, it failed to ask the district court to postpone ruling until after discovery. Nor did O'Neal move for reconsideration. Having acquiesced in the resolution of the issue in the disposition of the Rule 12(e) motion, O'Neal cannot now complain that the district court should have acted differently.[1]

C

**[8]** Having cleared both procedural roadblocks, we turn, finally, to the merits of O'Neal's tacking claim.[2] A trademark

---

[1]For this reason, we disagree with the dissent's assertion that the district court erred "by resolving the tacking question as a matter of law in a motion for a more definite statement, without receiving any evidence or making a supportable finding that reasonable minds could not differ on the issue." Dissent at 11619. As discussed above, O'Neal did not object to resolving the issue during a pre-discovery Rule 12(e) motion. The district judge was not obligated to instruct O'Neal how to litigate its case.

[2]We have never decided what standard of review to apply to an order on a motion for a more definite statement. The Fifth Circuit reviews such orders for an abuse of discretion. *See Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989); *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959). We need not decide the issue here, however, because the district court resolved tacking as a matter of law.

owner may "claim priority in a mark based on the first use date of a similar, but technically distinct, mark—but only in the exceptionally narrow instance where the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark." *Brookfield*, 174 F.3d at 1047-48 (internal quotation marks omitted). Tacking is a question of fact. *See Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 759 (9th Cir. 2006). "A question of fact may be resolved as a matter of law if reasonable minds cannot differ and the evidence permits only one conclusion." *Id.*

[9] "The standard for 'tacking' . . . is exceedingly strict: [t]he marks must create the *same, continuing commercial impression*, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." *Brookfield*, 174 F.3d at 1048 (internal quotation marks omitted). Our precedent demonstrates that tacking is allowed only in narrow circumstances. In *Brookfield*, we concluded that "moviebuff.com" cannot be tacked onto "The Movie Buff's Movie Store." *Id.* at 1049. There, we reasoned that " 'The Movie Buff's Movie Store' and 'moviebuff.com' are very different, in that the latter contains three fewer words, drops the possessive, omits a space, and adds '.com' to the end." *Id.* Similarly, in *Quiksilver*, we held that the district court erred in tacking "QUIKSILVER ROXY" onto "ROXY." *Quiksilver*, 466 F.3d at 760. We reasoned that "a reasonable jury could easily conclude that 'QUIKSILVER ROXY' and 'ROXY' did not create the 'same, continuing commercial impression' at the time the 'ROXY' brand was introduced." *Id.*

Here, because One Industries first used the One Icon in 1999, the most relevant comparison is between the Rounded O' mark, developed in 1997, and the Angular O' mark, created in 2003:

  

Because the district court resolved the tacking issue as a matter of law, we must decide whether the Rounded O' mark and the Angular O' mark differ to such a degree that no reasonable jury could conclude that they create the "same, continuing commercial impression."

[10] We recognize that this is a close case, but we agree with One Industries and with the district court that O'Neal cannot meet the "exceedingly strict" standard for tacking. Although both marks consist of a styled O followed by an apostrophe, the similarities largely end there. The apostrophes are markedly different: in the Rounded O' mark it is entirely separated from the O and appears to be a standard apostrophe. In contrast, the Angular O' mark's apostrophe is connected to the main image and looks like a triangle. The lower and upper horizontal lines on the Rounded O' mark are thinner than the corresponding lines on the Angular O' mark. While the Rounded O' mark is boxy, the Angular O' mark looks like the outline of a lemon. These differences, in our view, establish that the two marks are not "indistinguishable." *Brookfield*, 174 F.3d at 1047. Like the marks at issue in *Brookfield* and *Quiksilver*, the Rounded O' mark and the Angular O' mark differ in several material respects.

[11] Cases from other circuits and from the Trademark Board confirm that tacking will be allowed only if the marks are virtually identical. The Sixth Circuit has held that "dci" may not be tacked onto "DCI." *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 623-25 (6th Cir. 1998). The Federal Circuit has concluded that "CLOTHES THAT WORK. FOR THE WORK YOU DO" cannot be tacked onto "CLOTHES THAT WORK." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1160 (Fed. Cir. 1991). The

Trademark Board has refused to tack the phrase "AMERI-CAN MOBILPHONE PAGING" with a stars and stripes background onto "AMERICAN MOBILPHONE" with the same background. *Am. Paging Inc. v. Am. Mobilphone Inc.*, 13 U.S.P.Q. 2d 2036 (T.T.A.B. 1989). The Trademark Board has also refused to tack "PRO-CUTS" onto "PRO-KUT." *Pro-Cuts v. Schilz-Price Enters. Inc.*, 27 U.S.P.Q. 2d 1224, 1227 (T.T.A.B. 1993). In one of the few reported cases allowing tacking that we have found, the Trademark Board allowed a company to tack "Hess's" onto "Hess." *Hess's of Allentown, Inc. v. Nat'l Bellas Hess, Inc.*, 169 U.S.P.Q. 673, 674-75 (T.T.A.B. 1971).

**[12]** Based on this precedent, we conclude that the district court properly granted One Industries' motion for a more definite statement. The material differences between the Rounded O' mark and the Angular O' mark, described above, convince us that this is not one of those "exceptional" instances in which tacking should be permitted.

### III

Persuaded that the district court properly compared the Rounded O' mark with the One Icon, we next consider O'Neal's claim that the district court erred by finding no likelihood of confusion between the two marks. We review a grant of summary judgment de novo, drawing "all reasonable inferences . . . in favor of the non-moving party." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). "Although disfavored in trademark infringement cases, summary judgment may be entered when no genuine issue of material fact exists." *Id.*

**[13]** To determine whether a "likelihood of confusion" exists, we employ the eight factor test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir.

2003): "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines." Whether there is a likelihood of confusion between two competing marks is a question of fact. *Quiksilver*, 466 F.3d at 759.

We have long cautioned that applying the *Sleekcraft* test is not like counting beans. *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield*, 174 F.3d at 1054. "Although some factors — such as the similarity of the marks and whether the two companies are direct competitors — will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Id*. The *Sleekcraft* factors are not exhaustive, "and non-listed variables may often be quite important." *Id*.

Applying *Sleekcraft*, the district court concluded that there is no likelihood of confusion as a matter of law. Accordingly, the question we must decide on appeal is whether a reasonable jury could conclude that a consumer might reasonably believe that a One Industries helmet is actually an O'Neal helmet. In other words, we must step into the shoes of a motocross racer as he or she browses for helmets. Would confusion be likely?

The two logos appear as follows:

       

**[14]** We consider the *Sleekcraft* factors in order of their general importance in this particular case. We begin by recognizing that O'Neal and One Industries compete directly in the market for motorcycle products, meaning that the second and fifth *Sleekcraft* factors weigh in favor of a finding of likelihood of confusion.

Keeping the relevant market in mind, we turn to the third *Sleekcraft* factor: the similarity of the marks. We look to "sight, sound and meaning" to determine the similarity of competing marks. *Dreamwerks*, 142 F.3d at 1131. Because any consumer confusion in this case would occur as motocross enthusiasts select helmets inside a store or during online browsing, *sight* is significantly more important when comparing these marks than sound or meaning. Verbally articulating the Rounded O' mark or the One Icon, or mentally pondering the meaning of the marks, is not part of buying a motorcycle helmet. *Cf. id.* (trademark case involving "Dreamwerks" and "Dreamworks," in which the identical *sounds* of the two marks were important).

**[15]** We agree with the district court that the two marks are visually dissimilar. A key distinguishing characteristic of the Rounded O' mark is a prominent apostrophe, which the One Icon noticeably lacks. The One Icon consists of "two angular symbols . . . placed in such a way that a 'Z'-shaped space appears between the two," while the "Rounded O is clearly a letter 'O' with a prominent apostrophe and is slightly angled." Also, the One Icon sometimes appears in different colors.

**[16]** A comparison of how the marks appear in the marketplace confirms the conclusion that the marks are visually dissimilar. *See Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984). Below is a snapshot of an O'Neal helmet featuring the Rounded O' mark (left) and a One Industries helmet (right) featuring the One Icon.




Our hypothetical motocross enthusiast would be able to distinguish between these helmets. The disputed marks appear in entirely different locations on the helmets and are surrounded by different designs. Accordingly, the dissimilarity of the marks suggests that confusion is unlikely.

[17] We turn next to the fourth *Sleekcraft* factor. "Evidence of actual confusion constitutes persuasive proof that future confusion is likely." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) (internal quotation marks omitted). "[I]f a party produces evidence from which a reasonable jury could surmise that an *appreciable* number of people are confused about the source of the product, then it is entitled to a trial on the likelihood of confusion — although it will not necessarily prevail at that trial." *Id.* Here, however, O'Neal produced no evidence of actual confusion between the Rounded O' mark and the One Icon.[3] Accordingly, the fourth *Sleekcraft* factor weighs against a finding of a likelihood of confusion.

[18] The lack of evidence of any deceptive intent on One Industries' part — the seventh *Sleekcraft* factor — also weighs in its favor. "While an intent to confuse consumers is not required for a finding of trademark infringement, intent to

---

[3]O'Neal produced evidence of actual confusion between helmets featuring the *Angular O' mark* and One Industries' helmets. As the district court concluded, however, O'Neal's evidence post-dates the advent of the 1999 One Icon and the 2003 Angular O' mark. Therefore, the evidence is not relevant to a comparison of the Rounded O' mark with the One Icon.

deceive is strong evidence of a likelihood of confusion. When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (internal quotation marks and citations omitted).

O'Neal contends that One Industries intended to trade on the goodwill established by the O' mark. In support of this argument, O'Neal claims that "at the time One Industries planned its helmet line, it knew O'Neal was selling helmets." O'Neal also emphasizes One Industries' admission "that in planning its helmet line it 'looked [at] what was going on in the helmet business' and 'grabbed pretty much the best helmets in the industry.' " "Given that O'Neal's helmets were among the best selling helmets, it is reasonable to infer that One Industries 'grabbed' O'Neal's helmets." Finally, O'Neal points out that One Industries did not place its name on its helmets. "By doing this," O'Neal contends, "its intent to trade off the strength of O'Neal's mark can be inferred."

[19] The evidence of intent to deceive O'Neal proffers is weak, to say the least. O'Neal provides no evidence that "grabbing the best helmets in the industry" had anything to do with O'Neal's O' mark. In addition, One Industries points out that the name "One Industries" appears on the boxes and product literature accompanying its helmets, and that One Industries "used the two primary logos they had been using the previous five years, the 'One Icon' and the 'One Angular' marks." Because O'Neal offers nothing linking One Industries to the Rounded O' mark, no reasonable jury could conclude that One Industries intended to deceive consumers by trading off the goodwill associated with the Rounded O' mark. Accordingly, the lack of evidence of intent to deceive also supports the district court's conclusion.

[20] Next, we address the first *Sleekcraft* factor: the strength of O'Neal's mark. "Trademark law offers greater

protection to marks that are 'strong,' i.e., distinctive." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992). "The strength of a mark is determined by its placement on a continuum of marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection; to 'arbitrary' or 'fanciful' awarded maximum protection." *Id.* (internal quotation marks omitted).

Generic marks are "those that refer to the genus of which the particular product is a species." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (internal quotation marks omitted). "Descriptive terms directly describe the quality or features of the product." *Brookfield*, 174 F.3d at 1058 n.19. "A suggestive mark conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." *Id.* Finally, "[a]rbitrary and fanciful marks have no intrinsic connection to the product with which the mark is used; the former consists of words commonly used in the English language . . . whereas the latter are wholly made-up terms." *Id.* (citation omitted).

Identifying whether a mark is generic, descriptive, suggestive, arbitrary or fanciful, however, is only the first step of the inquiry. "The second step is to determine the strength of this mark in the marketplace." *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988), *abrogated in part on other grounds as recognized in Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114 (9th Cir. 1990). When similar marks permeate the marketplace, the strength of the mark decreases. "In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd." *Id.* (internal quotation marks omitted).

**[21]** The Rounded O' mark is "fanciful," entitling it to strong protection. By itself, the mark neither describes nor "conveys an impression of a good." *Brookfield*, 174 F.3d at 1058 n.19. The Rounded O' mark has "no intrinsic connection

to the product with which the mark is used [i.e. a motocross helmet]" and is a "wholly made up term[ ]." *Id.* The record, however, contains several examples of similar O marks used by different companies, including Oakley, OGIO, and Alloy MX. Such use of other "O" symbols weakens the Rounded O' mark. Based upon these offsetting considerations, we agree with the district court's apparent view that the first *Sleekcraft* factor, at best, weighs slightly in favor of finding confusion.[4]

[22] Although O'Neal and One Industries are direct competitors, we are persuaded that the marks do not look alike, that O'Neal has not produced evidence of actual confusion, and that no reasonable jury could infer that One Industries deliberately appropriated the goodwill associated with the O' mark. The O' mark, though conceptually strong, is weakened by the presence of other, similar marks. In the absence of evidence of actual confusion or intent to deceive, we decline to grant O'Neal a virtual monopoly on the use of the letter "O" on motorcycle helmets. The mere fact that the two companies are direct competitors and happen to use the same letter on their products is not sufficient to show infringement. Accordingly, we conclude that there is no likelihood of confusion in this case, and that the district court properly granted summary judgment to One Industries.

IV

We turn, lastly, to O'Neal's remaining claims.

---

[4]The sixth *Sleekcraft* factor — the degree of care that customers are likely to exercise — does not weigh strongly in either direction. Helmets are not like T-shirts, but neither are they like cars. We agree with the district court's assessment: "a customer may not be as discerning when purchasing less expensive items such as t-shirts, but the higher price of helmets would involve a higher degree of care by purchasers."

A

O'Neal contends that One Industries' One Angular Mark infringes its O'NEAL mark. A side-by-side comparison of the two marks speaks for itself:

        

We agree with the district court that because these marks are "dramatically different," there is no likelihood of confusion. To be sure, the O'NEAL mark is stronger than the Rounded O' mark because it is more distinctive and is not weakened by other similar marks in the industry. In addition, we must credit O'Neal's evidence of actual confusion because the O'NEAL mark predated the One Icon. Nevertheless, the evidence of confusion is weak because none of it suggests that the source of confusion was the alleged similarity between the O'NEAL mark and the One Angular mark.

**[23]** More importantly, a comparison of the two marks plainly demonstrates that they are not at all similar in sight, sound, or meaning. The One Angular mark is missing an apostrophe and an "AL" and is designed in a completely different manner. The two marks sound nothing alike and mean different things. Again, we decline to grant O'Neal a virtual monopoly on helmet designs that include the letter "O" or the word "One." Because the two marks are entirely different, we are satisfied that no reasonable jury could find a likelihood of confusion.

B

**[24]** O'Neal also claims that One Industries' trade dress infringes O'Neal's trade dress. This claim is unpersuasive.

"In contrast to a trademark, 'trade dress' refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics." *Int'l Jensen, Inc. v. Metrosound USA, Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). O'Neal identifies its trade dress as "its O'NEAL mark located on the lower side of the helmet in bold typeface against a graphical background." To state a claim for trade dress infringement, a plaintiff must show that its trade dress "(1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused with [the competing trade dress] by members of the consuming public." *Id.* at 823. Although O'Neal's trade dress is nonfunctional and has arguably acquired secondary meaning, we have already concluded that no reasonable factfinder could find a likelihood of confusion between the O'NEAL mark and the One Icon. Accordingly, the district court properly granted summary judgment to One Industries.[5]

V

Accordingly, the district court's grant of One Industries' motion for a more definite statement, and its grant of summary judgment to One Industries are

**AFFIRMED**.

---

[5]The district also properly granted summary judgment on O'Neal's state law claims for unfair competition and cancellation of trademark registrations. Both sides agree that these claims follow directly from the federal claims. *See Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) ("An action for unfair competition under Cal. Bus. & Prof. Code §§ 17200 et seq. is substantially congruent to a trademark infringement claim under the Lanham Act.") (internal quotation marks omitted).

GRABER, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that O'Neal did not forfeit the tacking argument by failing to raise it in the district court or in its notice of appeal. Maj. op. at 11603-06. I also agree with the majority's treatment of the One Angular mark/O'Neal mark and the trade dress claim. Maj. op. at 11617. But I disagree with the majority's holding that the district court committed no reversible error by ruling on the tacking issue—which the majority recognizes as a "highly fact-sensitive inquiry," maj. op. at 11607—in the context of a motion for a more definite statement, rather than in post-discovery summary judgment proceedings or later.

As the majority acknowledges, tacking is a question of fact. Maj. op. at 11608; *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 759 (9th Cir. 2006). Whether tacking is an issue of law or fact was a matter of first impression for the *Quiksilver* court. 466 F.3d at 759. The *Quiksilver* court broke with two other circuits, recognizing the fact-dependent nature of certain trademark questions, such as likelihood of confusion and tacking. *See Quiksilver*, 466 F.3d at 759; *cf. Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 623 (6th Cir. 1998); *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991).

A court may resolve a question of fact as a matter of law only if reasonable minds cannot differ and the evidence permits but one conclusion. *Quiksilver*, 446 F.3d at 759. The district court here erred by resolving the tacking question as a matter of law in a motion for a more definite statement, without receiving any evidence or making a supportable finding that reasonable minds could not differ on the issue. The court ruled on the motion on the basis of the parties' moving papers only, without oral argument.[1] The parties began initial discov-

---

[1] The court may have been led astray by One Industries' reliance on Sixth Circuit, rather than Ninth Circuit, precedent in its reply in support

ery more than a month after submitting their moving papers on the motion by filing a Joint Discovery Plan on December 15, 2006.

In my view, it was inappropriate for the court to decide that O'Neal was not permitted to tack its 2003 mark to its older marks *as a matter of law* in a pre-discovery Federal Rule of Civil Procedure 12(e) order. At that stage in the litigation, it would have been impossible for the district court to conclude that reasonable minds could not differ and that the evidence permitted only one conclusion regarding tacking. Indeed, the court made no such finding, and the majority itself concedes that this is a "close case." Maj. op. at 11609.[2] The order granting the motion states only that the "Court is unpersuaded by O'Neal's claim that it uses only one mark that has been slightly altered over the years." That conclusory statement, unsupported by any evidence in the record at that time, is not enough to decide the highly fact-dependent question of tacking as a matter of law. I would therefore reverse and remand.

---

of the motion for a more definite statement claiming that "[w]hether two variants constitute a single mark is a question of law" (citing *Data Concepts*, 150 F.3d at 624).

[2]I am not aware of any precedent in which tacking has been rejected as a matter of law when the two marks are so closely related and alike. Here, both marks involve a non-capital, right-slanted, thick-sided, bold, and stylized "o" with an apostrophe after it at the upper right corner. *See* maj. op. at 11609. The cases cited by the majority, deciding that tacking was not allowed as a matter of law, either occurred after fuller factual development; or involved the addition, replacement, or subtraction of words or letters (or a conversion from capital to small letters, or vice versa); or both. Maj. op. at 11609-10. None of those changes occurred here.