**JOUJOU DESIGNS, INC., Plaintiff,**

v.

**JOJO LIGNE INTERNATIONALE, INC. and Joseph H. Linus, Defendants.**

**No. C–90–3493 SBA.**

United States District Court, N.D. California.

Oct. 28, 1992.

---

Neil A. Smith, Limbach & Limbach, San Francisco, CA (Amy B. Goldsmith, Gottlieb, Rackman & Reisman, P.C., New York City, of counsel), for plaintiff.

Joseph H. "JOJO" Linus, in pro. per.

## ORDER

ARMSTRONG, District Judge.

Plaintiff, JouJou Designs, Inc. (JDI), a maker of women's and junior miss apparel, brings a suit alleging trademark infringe-

ment and unfair competition against defendant, JOJO Ligne Internationale, Inc., and Joseph H. Linus, its founder and "president".[1] Both parties submitted a number of motions and cross-motions to this court. After reading all of the papers submitted and considering the arguments therein, the court concludes that: defendant's motion to dismiss for failure to prosecute should be denied; plaintiff's motion to compel defendant's deposition should be granted; defendant's motion to conform a previous order to the judge's intent should be denied; defendant's motion to file counterclaims should be denied; plaintiff's motion to strike affidavits should be granted; defendant's motion for summary judgment and partial summary judgment should be denied; and plaintiff's motion for partial summary judgment should be granted.

### Defendant's motion to dismiss for failure to prosecute. Plaintiff's motion to compel deposition.

Pursuant to Fed.R.Civ.P. 41(b), defendant asks this court to dismiss plaintiff's action for failure to prosecute. Defendant bases this claim on his assertion that plaintiff has undertaken no discovery in this case since its inception. Plaintiff, however, provides fairly uncontroverted evidence that they have, in fact, been trying to conduct discovery for over a year and that defendant refuses to comply.

■ Defendant admits that he was served with numerous deposition notices that were addressed to a Mr. JoJo Ligne. Defendant states that as he was served only with papers naming a nonparty, he had *no* notice that plaintiff was attempting to take his deposition. Defendant further suggests that plaintiff's labelling error was an attempt to trick him into some sort of admission concerning his name.

Although plaintiff could have taken greater care in preparing its papers, the issue is whether the defendant had "actual notice" of the discovery request that could be imputed to him *as a party* despite the wrong name.

*Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Mr. Linus admits that he is the president of JOJO Ligne Internationale. Further, in his papers to this court, Mr. Linus refers to himself as "Joseph 'JOJO' Linus". Finally, the address provided for Mr. Linus is the same as the address provided for JOJO Ligne Internationale. These elements, coupled with Mr. Linus' admission that he did in fact receive the mistitled deposition notices, are sufficient to conclude that defendant had notice that plaintiff wished to take his deposition.

■ Defendant's argument is further compromised by his admission that he did not respond to a *properly* titled and noticed document request. Defendant supports this failure to respond by asserting that Fed. R.Civ.P. 34 suggests that a document request from a party is only allowed when such request is included as part of a deposition notice to such party. (Defendant's Opposition to Plaintiff's Motion to Compel at 6). According to defendant, because he was never properly noticed in a deposition request, he was not required to respond to the document request. Defendant's reading of Rule 34 is baseless. Rule 34(b) clearly states that a document request may be served any time after the commencement of the action, it makes no mention of the document request being part of a deposition. Thus, even if defendant had an excuse for failing to allow plaintiff to take his deposition, which he *does* not, he has no excuse for failing to comply with plaintiff's document request.

Notwithstanding Mr. Linus' assertions, this court finds that Mr. Linus had actual notice that plaintiff was attempting to serve *him* with the deposition notice and that he was served with a properly noticed document request. As such, he was not entitled to simply ignore these notices and now assert that plaintiff has failed to undertake discovery. Defendant's motion is thus denied, and plaintiff's motion to compel deposition and discovery is granted.

---

1. Although defendant has held JOJO Ligne Internationale out to be a corporation, during the course of this litigation it was revealed that defendant Linus has never incorporated JOJO Ligne Internationale, Inc.

■ It is also noted that Mr. Linus presented to this Court in June a motion substantially similar to the current motion.[2] This court rejected that motion based upon much of the same reasoning employed herein. Given the court's ruling in the previous similar motion, Mr. Linus could not have reasonably concluded that the current motion had merit. As such this court concludes that Mr. Linus has abused the processes of this court in filing a patently frivolous motion. Plaintiff's request that defendant be sanctioned under Fed.R.Civ.P. 11 is granted, and defendant will pay plaintiff's cost of defending the duplicitous motion.

### Defendant's motion to conform Order.

At a hearing before this court in June, the status of JOJO Ligne Internationale, Inc. as a named defendant was discussed. Although Mr. Linus had held JOJO Ligne Internationale, Inc. out as a corporation, he, in fact, had never incorporated. As an unincorporated entity, JOJO Ligne Internationale, Inc. lacks the capacity to be sued. At the hearing, plaintiff's counsel agreed to the voluntary dismissal of the named corporation with the understanding that defendant Mr. Linus would be responsible for all of the acts complained of in the event of judgment. Defendant Linus expressed no objection, and this court dismissed the named corporation. On June 24, 1992 this court filed an Order dismissing the named corporation. Mr. Linus filed no objection to this Order, either before or after it was filed.

Defendant now wishes to have that Order altered to conform to what he contends was this court's intent in signing it. Mr. Linus asserts that because the court allowed a "condition" to the dismissal—that Mr. Linus would be responsible in the event of a judgment—that the dismissal was meant to be *with prejudice*. Mr. Linus further claims that the dismissal was involuntary. Neither of these contentions has any merit.

■ There was no indication at the hearing that plaintiff intended the dismissal to be with prejudice. Plaintiff dismissed the named corporation *solely* because they did not have the capacity to be sued. Plaintiff indicated at the hearing that they reserved the right to bring suit against JOJO Ligne Internationale, Inc. if such were ever incorporated. Further, this court drafted its Order pursuant to Fed.R.Civ.P. 41(b) which states that voluntary dismissals by order of the court are presumed to be *without* prejudice unless the order states otherwise. The language of the Order is clearly silent, and the Order is therefore deemed to be without prejudice.

■ Defendant's second contention is that the dismissal was involuntary. Defendant provides no support for this argument. It is undisputed that defendant expressed no objection to the plaintiff's *voluntary* dismissal of the named corporation at the hearing. Further, plaintiff filed no objections after the hearing or after the filing of the Order.

### Defendant's motion to file counterclaims.

■ Defendant brings this motion, presumably pursuant to Fed.R.Civ.P. 13(d)[3], stating that he would like to file a counterclaim. Rule 13(d) provides that a claim which either matured or was acquired by the pleader *after* serving a pleading may, *with permission of the court,* be presented as a counterclaim by supplemental pleadings. Since defendant has served his answer, he now asks the court's permission to file supplemental pleadings laying out his counterclaims.

At a hearing before this court on January 30, 1992, defendant indicated that he had numerous counterclaims to file. In order to expedite matters in this case, the court ordered defendant to bring all proposed counterclaims in a hearing before this court on May 12, 1992. On April 17, the defendant filed a letter with this court stating that he had no counterclaims to file. Defendant stated that his proposed counterclaims arose out of different transactions or occurrences than

---

2. The June motion was also entitled "Motion to Dismiss for Failure to Prosecute" and was also based upon plaintiff's alleged failure to conduct discovery.

3. Defendant does not state the basis for this motion.

those at issue in the instant case and as such could be brought in a separate action.

This court now finds that defendant's proposed counterclaim should have been presented at the May 12 hearing. While the proposed counterclaim falls within the ambit of Rule 13(d) in that they were acquired or matured *after* defendant served his answer, the proposed counterclaims do not appear to encompass any events which occurred after May 12, 1992. As such, defendant had notice of these claims in time to present them to the court. Since defendant declined to present his counterclaims to the court at the scheduled hearing, the court finds that he may not bring them at this late date.

### Plaintiff's motion to strike affidavits.

 Plaintiff brings this motion pursuant to Fed.R.Civ.P. 56(e) and Local Rule 220–7 [4], asserting that the documents that defendant titles "affidavits" are not in the proper form. Plaintiff expresses concern because of defendant's apparent reluctance to state anything under oath, as evidenced by defendant's refusal to submit to a deposition.

Under both the Federal and Local Rules, affidavits should be sworn or certified statements containing *only* facts (as opposed to conclusion or argument), and stating the basis for statements made upon information and belief. Sworn or certified copies of all papers or parts thereof that are referred to in the affidavit must be attached to and served with the affidavit. Defendant's self-titled "affidavits" are neither sworn nor certified, are rife with argument and conclusion, contain very little of what could be termed "facts", and state no basis for the assertions therein. Further, defendant makes reference to other documents, letters and papers that are neither sworn or certified nor attached to his "affidavits". Accordingly, this court concludes that these self-titled "affidavits" may not be submitted in support of defendant's motions. Plaintiff's motion to strike is granted.

### The cross motions for partial summary judgment.

Both plaintiff and defendant bring Fed. R.Civ.P. 56(b) motions for partial summary judgment on the issue of liability for infringement. Summary judgment is appropriate under Rule 56(b) where there exist no genuine issue of material fact and as a matter of law the moving party is entitled to win. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). For the purposes of the motion, the court must construe the opposing party's papers liberally; resolving all ambiguities and drawing all reasonable inferences in their favor. *Patrick v. LeFevre*, 745 F.2d 153 (2nd Cir.1984). That being the case, a factual dispute is to be considered genuine only if the non-moving party can offer "concrete evidence" such that a reasonable jury could return a verdict in their favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the opposing party's claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. Summary judgment on trademark infringement issues such as those presented here has been deemed to be appropriate. *Century 21 Real Estate v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir.1988).

There do not appear to be any genuine issues of material fact in this case. Both parties agree that JOUJOU is the holder of a legitimate trademark for the name JOUJOU and that the mark is incontestable.[5] The only issue left to be resolved is whether defendant's use of the JOJO mark constitutes an infringement of plaintiff's mark which is likely to cause confusion among consumers of plaintiff's products. Where, as here, there are no facts in dispute and the issue of

---

4. Fed.R.Civ.P. 56. Local Rule 220–7.

5. Plaintiff's trademark number 1,138,987 for the mark JOUJOU was registered on August 26, 1980 for "ladies' sportswear". In early 1986 JOUJOU filed a declaration under §§ 8 & 15 of the Trademark Statute claiming continuous use in interstate and intrastate commerce within the U.S. for five consecutive years from the registration date. The acceptance of this Declaration by the Patent and Trademark Office has made the mark incontestable. The validity of an uncontested trademark can only be contested under specific circumstances, none of which has been alleged here.

confusing similarity is based solely upon a comparison of the marks in the context of extrinsic facts, it is appropriate for the court to determine the issue of confusing similarity. *J.B. Williams v. LeConte Cosmetics,* 523 F.2d 187, 190 (9th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976).

Title 15 U.S.C. § 1114(1)(a) defines trademark infringement as follows:

(1) Any person who shall, without the consent of the registrant;

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) provides a cause of action for anyone injured by unfair competition:

"(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact or false or misleading representation of fact, which; 1) is likely to cause confusion, or cause mistake, or to deceive as to affiliation, connection or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services or commercial activities of another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act."

■ The tests for infringement of a federally registered mark under 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under 15 U.S.C. § 1125(a), and common law unfair competition are the same: whether confusion is likely. *Grey v. Campbell Soup Co.,* 650 F.Supp. 1166, 1173 (C.D.Cal.1986), *aff'd,* 830 F.2d 197; *see also, New West Corp. v. NYM Co.,* 595 F.2d 1194 (9th Cir.1979). Likelihood of confusion is not limited solely to confusion as to the source or origin of the goods. The important inquiry is whether the *average purchaser* would be likely to believe that the infringer's product has "some connection" with the mark owner. *Id.*

■ The Ninth Circuit considers the following factors in determining whether confusion is likely: (1) the strength of the trademark owner's mark; (2) similarity in appearance, sound and meaning of the marks; (3) the proximity of the goods; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; and (7) the intention of the defendant in selecting and using the alleged infringing name. *Century 21* at 1179; *Grey* at 1173.[6]

■ **Strength of mark**—A strong mark is one which is used only in an arbitrary and fanciful manner relative to the goods it seeks to sell. A weak mark is a mark that is a meaningful word in common usage or merely suggestive of the goods sold. In determining the strength of a mark, courts consider its inherent distinctiveness, the duration of its use, the volume of products sold under the mark, and the amount of advertising expenditures devoted to the mark. *Grey* at 1172. JOUJOU is a french word that translates roughly into "plaything" or "toy". This trademark, as applied to JOUJOU's product line is wholly arbitrary and fanciful; it has no descriptive or suggestive meaning when used for the products in question and therefore is inherently distinctive. JOUJOU has used this mark continually since 1977, and since 1977, sales revenue and advertising expenditures for JOUJOU products have exceeded $300 million and $7 million respectively. The mark is used on all of JOUJOU's products and has been extensively advertised in magazines, catalogs, newspapers, and department

---

**6.** This is also the standard for whether there has been a violation of California's trademark and unfair competition law. *In re Marriage of Shelton,* 118 Cal.App.3d 811, 816, 173 Cal.Rptr. 629 (1981). Thus if a likelihood of confusion is found under federal law, there is also a likelihood of confusion in violation of common law.

store catalogs. Such substantial advertising expenditures and sales of JOUJOU products constitute compelling evidence of the strength of the mark entitling JOUJOU to broad protection from infringing uses. *Grey* at 1172.

■ **Similarity of the marks**—A diminished standard of similarity may be applied when two products such as JOUJOU and JOJO are closely related as a result of similar packaging and commercial appeal, move through the same or similar channels of trade, and the same or overlapping classes of purchasers are involved. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979). The similarity between JOUJOU and JOJO is rather obvious. They both use the double repetition of the same first sound. They are presented alike in advertising; in a bold script format. Most importantly, since neither is an ordinary English word both are often pronounced alike by consumers.

■ Defendant makes two arguments in an attempt to controvert the similarity of the marks. He first offers the correct pronunciation of each word and the french origins of JOUJOU as evidence that there should be no confusion. However, it is well established that notwithstanding the rules of phonetics, there is *no* such thing as the *correct* pronunciation of a trademark. *In re Parfumerie Fragonard G. Fuchs & Cie.*, 137 U.S.P.Q. 612 (1963). "This rule is especially true where, as here, the marks of the parties both consist of coined and/or unusual terms, and while the pronunciations thereof may vary with the individual, it is quite evident [that they could be pronounced alike]." *Id.* The issue of likelihood of confusion is determined according to how consumers react to the mark, regardless of how "correct" that reaction might be. As to defendant's excursion into the french origins of JOUJOU, it is irrelevant. In *Jules Berman v. Consolidated Distilled Products*, 202 U.S.P.Q. 67 (1979) the court dismissed a similar argument, stating: "But who would be aware of this meaning? There is no question but that some seg-ment of purchasers conversant in [foreign language] dialects may be aware of this significance if they would take the time and effort at the point of purchase to make the analysis. However the concept or understanding of the general or ordinary purchaser of the goods involved, not that of linguistic experts or specialists or those few, percentage wise, familiar with a foreign language, as to the meaning of a word trademark is the controlling factor in determining the question of likelihood of confusion." *Id.* at 70.

Defendant next offers that his mark is *not* "JOJO" but rather "JOJO Ligne Internationale", thus making it very distinct from JOUJOU. In support of this argument, he relies on *Vitarroz v. Borden*, 644 F.2d 960 (2d Cir.1981) which held that when similar marks are presented in association with company names the likelihood of confusion is reduced. Putting aside the fact that this case is not controlling on this court, defendant's reliance is still misplaced. The *Vitarroz* court reached their conclusion because in that case one of the marks was clearly *subordinated* to the company name. That is not the case here. As the exhibits presented by the parties clearly show, defendant's "JOJO" mark appears prominently in script at the top of the page, superimposed on top of the ad itself. The name of the company appears in plain typed script at the bottom of the entire ad.

Finally, the marks need not be identical, as defendant argues, in order to be found confusing.[7] Because JOUJOU and JOJO are substantially similar both in pronunciation and usage, the likelihood of consumer confusion is increased.

**Proximity of the goods**—In this case the goods sold by both parties are identical—women's clothing. There seems to be no dispute among the parties that the goods would be displayed in close proximity in stores where they would be purchased by consumers.

---

7. Examples where confusion was found: *Century 21 v. Sandlin*, 846 F.2d 1175 (9th Cir.1988) (finding confusion between Century 21 and Century Investments); *Hillerich & Bradsby Co. v. Palm Springs Golf Co.*, 215 U.S.P.Q. 680 (C.D.Cal. 1982) (finding confusion between Power Bilt and Power Bolt).

**Evidence of actual confusion**—Defendant to date has refused to comply with any discovery or deposition requests, rendering it more difficult for JOUJOU to question him regarding instances of actual confusion. Further, plaintiff makes no mention of instances of actual confusion in its papers.

Under federal trademark law, however, evidence of *actual* confusion is not required to make a determination that there is a likelihood of confusion between two marks. *Century 21* at 1178. It is just required that there exist a substantial likelihood of confusion.

**Marketing channels used**—Like most apparel wholesalers, JOUJOU and JOJO use substantially the same marketing channels; industry publications. In this case the fact that JOUJOU discovered the infringing mark in an ad in the industry trade magazine is strong evidence that the marketing channels used are the same. A likely consequence of this convergence in marketing channels used is the increased possibility of confusion. *See e.g., Grey* at 1174.

**Type of product and degree of care of purchasers**—The standard to be applied is that of the typical buyer exercising ordinary care. Plaintiff asserts that because these clothes are low to moderately priced, customers normally buy them without spending a great deal of time and effort. Because consumers of these goods are not deliberate when choosing them, plaintiff believes that there is likely to be confusion between goods marked JOUJOU and those marked JOJO. Defendant makes no assertions that plaintiff's generalizations concerning the potential purchasers of these goods is incorrect. The court thus concludes that, given the proximity of the products, such indiscriminate selection by purchasers would increase the likelihood of confusion between plaintiff's and defendant's goods.

**Intention of defendant**—Mr. Linus states that "JOJO" is his nickname. However, aside from this lawsuit, there is no evidence that he has ever identified himself or is identified by others in this way. Further, defendant states that prior to the commencement of this suit he was unaware of JOUJOU's apparel. The court finds that this claim lacks credibility in view of defendant's contention that he is a participant in this market. JOUJOU has sold over $25 million worth of goods in California to date. JOUJOU has been extensively advertised in California, particularly in *California Apparel News,* a leading regional trade publication, as well as in circulars and catalogs for Macy's California stores.

Defendant's choice of the name JOJO coupled with the similarity of the script used, the placement of his mark, and the general french "sound and feel" of his company's name raise a strong inference that defendant was attempting to trade off of JOUJOU's mark, thus enhancing the marketability of his products.

"Bad intent" is not necessary to a finding that a likelihood of confusion exists. When there is evidence to suggest that an alleged infringer knowingly adopted a mark similar to another's, the court can presume that the defendant will accomplish his purpose: that is, that the public will be deceived. *AMF* at 354. Moreover, the good or bad intentions of the alleged infringer are less probative of the likelihood of confusion, yet may be given considerable weight in fashioning a remedy. *Id.*

In light of the above discussion, the court concludes that plaintiff has shown that the marks are substantially similar and likely to be confused. Therefore, plaintiff's cross-motion for partial summary judgment as to liability is granted and defendant's cross-motion for summary judgment is denied.

ACCORDINGLY IT IS ORDERED THAT:

1. Defendant's motion to dismiss for failure to prosecute is DENIED;

2. Defendant is to pay plaintiff their costs incurred in opposing the motion to dismiss for failure to prosecute;

3. Plaintiff's motion to compel deposition and discovery is GRANTED;

4. Defendant's motion to conform order to judge's intent is DENIED;

5. Defendant's motion for leave to file counterclaims is DENIED;

6. Plaintiff's motion to strike defendant's affidavits is GRANTED;

7. Defendant's motions for summary judgment and partial summary judgment are DENIED;

8. Plaintiff's motion for partial summary judgment is GRANTED;

9. Plaintiff shall submit to this court, no less than ten (10) days after the filing of this Order, a detailed accounting of the costs associated with the motion to dismiss. Failure to file an accounting within this time frame will result in no costs being awarded;

10. Defendant shall submit to this court, no less than five (5) days after plaintiff files an accounting, objections, if any, to the accounting;

11. The matter of costs awarded will be deemed taken under submission as of the last date upon which defendant could file objections;

12. The Pre–Trial conference set for November 17, 1992 is VACATED;

13. A Pre–Trial conference will be held on January 12, 1993 at 10:00 a.m. in Courtroom 14. Pre–Trial preparation documents are due no later than December 29, 1992.

IT IS SO ORDERED.