CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE
I. INTRODUCTION
Plaintiff Synoptek, LLC, filed this action on October 4, 2016, against Defendant Synaptek Corporation for trademark infringement, false designation of origin, unfair competition, and trademark cancellation based on Synaptek's use of the '160 mark "SYNAPTEK." (Dkt. 1 [hereinafter "Compl."].) Synaptek filed a counterclaim against Synoptek on March 20, 2017, for non-infringement of trademark. (Dkt. 43.) Before the Court is Synoptek's motion for partial summary judgment for cancellation of Synaptek's '160 trademark. (Dkt. 52 [hereinafter, "Mot."].) For the following reasons, the motion is GRANTED.
II. BACKGROUND
Synoptek is an IT services company that provides a host of computing services, such as IT operations, IT program management, application management, and cloud and hosting services.[1] (Dkt. 59-3 [Complete Separate Statement of Undisputed Facts, hereinafter "SUF"] ¶¶ 1-2, 10-14.) Synoptek serves clients in commercial sectors such as finance, healthcare, and retail, as well as in state, local, and federal government. (Id. ¶ 3.) Synoptek markets its services through internet presence, advertising, press releases, word-of-mouth, and print advertising. (Id. ¶ 16.) Synoptek owns U.S. Trademark Registration No. 3,424,720 ("Synoptek" or "the '720 mark"), which was registered as of May 6, 2008. (Id. ¶¶ 4-5, 7.) The term "Synoptek" is not a recognized word in the English language. (Id. ¶ 8.) The '720 mark is registered in International Class 42 for various computer services.[2] (Id. ¶ 11.)
*831 Synaptek was incorporated in August 2008, (id . ¶ 58), and is also an IT services company that provides computing services that include systems integration, operations support, program management, application development, and cloud integration, amongst other services,[3] (id. ¶¶ 18, 20-21, 25-27). The co-founders of Synaptek were not aware of "Synoptek" at the time they chose their company name. (Id. ¶ 63.) Synaptek is a certified small disadvantaged business ("SBD") and provides IT services to the federal government. (Id. ¶¶ 20-21.) Synaptek maintains a website, but disputes that it sells its services through the site. (Id. ¶ 29.) Synaptek does not dispute that it markets its services through advertising, press releases, word-of-mouth, and print advertising. (Id. ¶ 29.) Synaptek bids on federal government small-business set-aside contracts. (Id. ¶ 70.)
On October 10, 2013, Synaptek filed U.S. Trademark Application No. 80/088,536 ("the '536 application") with the U.S. Patent and Trademark Office ("PTO") seeking a federal registration for the designation "Synaptek." (Id. ¶ 30; Dkt. 52-3 [Declaration of Salil Bali, hereinafter "Bali Decl."] Ex. 7.) The '536 application claimed a date of first use of August 4, 2008, and sought registration in International Class 42 for various IT and computing services. (SUF ¶¶ 23, 30.) On February 23, 2014, the PTO denied the '536 application pursuant to 15 U.S.C. § 1052(d) based on a likelihood of confusion with the marks "Synoptek," "Synetek Solutions" (two marks), and "Synaptyk" (two marks). (Id. ¶ 31; Bali Decl. Ex. 8.) The PTO found that "Synaptek" is the "phonetic equivalent" to all five marks, that the mark owners' services are "identical in part, and otherwise closely related," and noted the "only difference" between "Synaptek" and "Synoptek" was the use of "A" versus "O." (SUF ¶ 32; Bali Decl. Ex. 8.) Synaptek filed a response to the PTO's February 23 denial arguing against the PTO's finding of a likelihood of confusion. (SUF ¶ 33; Bali Decl. Ex. 9.) On September 4, 2014, the PTO issued a final office action denying the '536 application based on a likelihood of confusion between "Synaptek" and the marks "Synoptek" and "Synaptyk" (two marks). (SUF ¶ 34; Bali Decl. Ex. 10.)
The Synaptyk marks, U.S. Trademark Registration Nos. 4,015,160 ("the '160 mark") and 4,015,163, were registered to a company from Plano, Texas. (SUF ¶ 37.) The '160 mark has been registered since 2011 in International Class 42 for various computer services.[4] (Id. ¶ 22.) On March 3, 2015, Synaptek filed a Request for Suspension of the prosecution of the '536 application as well as a Petition for Cancellation of the Synaptyk marks. (Id. ¶ 38; Bali Decl. Ex. 13; Dkt. 54 [Declaration of Edward Schewe, hereinafter "Schewe Decl."] Ex. 36.) In July 2015, Synaptek acquired ownership of the Synaptyk marks. (SUF
*832 ¶ 39.) Synaptek thereafter informed the PTO examiner in connection with the '536 application that it now owned the Synaptyk marks, and the '536 application was reinstated. (Id. ¶ 40.) On July 15, 2015, Synaptek filed a Section 7 request to amend the '160 mark to "reflect an updated spelling of its trademark from SYNAPTYK to SYNAPTEK." (Id. ¶ 41; Bali Decl. Ex. 15.) The PTO denied Synaptek's request that same day in light of the ongoing cancellation proceeding for the '160 mark that Synaptek previously had filed. (SUF ¶ 42; Bali Decl. Ex. 16.) Synaptek thereafter filed a Petitioner's Motion to Dismiss as Moot the cancellation proceeding for the '160 mark as it had acquired the Synaptyk marks, (SUF ¶ 98; Schewe Decl. Ex. 40), and filed a response to the PTO's denial of Synaptek's request to amend the '160 mark, (SUF ¶ 99; Schewe Decl. Ex. 41).
On October 27, 2015, the PTO issued another final office action on the '536 application, rejecting registration of the designation "Synaptek" due to a likelihood of confusion with "Synoptek." (SUF ¶ 43; Bali Decl. Ex. 17.) The PTO specifically held that the "marks are essentially phonetic equivalents and thus sound similar," and while the marks have a different vowel, "the vowels 'A' and 'O' often sound alike and can create words that are phonetically equivalent." (Bali Decl. Ex. 17.) The PTO also held that the two companies' services were "identical in part, and otherwise closely related." (Id. ) On November 12, 2015, the PTO denied Synaptek's July 15, 2015, request for a Section 7 Amendment of the '160 mark because the proposed amendment "would materially alter the character of the mark." (SUF ¶ 44; Bali Decl. Ex. 18.)
On April 20, 2016, Synaptek filed a petition with the PTO Director to accept the Section 7 Amendment of the '160 mark to change "Synaptyk" to "Synaptek." (SUF ¶ 47; Bali Decl. Ex. 20.) Synaptek indicated it had two pending applications for marks, including the '536 application, and attached the PTO's decisions from February 3 and September 4, 2014, on the '536 application. (Bali Decl. Ex. 20.) Synaptek did not attach or mention the PTO's October 27, 2015, final office action rejecting the designation "Synaptek" based on the likelihood of confusion with "Synoptek." (Id. ) On April 27, 2016, Synaptek filed a request for reconsideration of the PTO's October 27 final office action. (SUF ¶ 45; Schewe Decl. Ex. 47.)
On June 10, 2016, the PTO again denied the '536 application based on the likelihood of confusion between "Synaptek" and "Synoptek," and because the parties' services were "identical in part, but otherwise closely related." (SUF ¶ 45; Bali Decl. Ex. 19.) Synaptek did not inform the PTO, in relation to its Section 7 Amendment Petition, of this PTO Office Action. (SUF ¶ 50.) On September 27, 2016, the PTO, through a paralegal trademark specialist rather than the Director, reversed its earlier denial and granted Synaptek's Section 7 Amendment of the '160 mark. (Id. ¶¶ 52-53; Bali Decl. Exs. 21, 36, 49.) An updated certificate for the '160 mark, "Synaptek," was issued on November 1, 2016. (SUF ¶ 110; Schewe Decl. Ex. 52.)
Prior to the PTO's grant of Synaptek's Section 7 Amendment, Synoptek had filed U.S. Trademark Application No. 86/923,471 ("the '471 application") to register the designation "Synoptek Edge" with the PTO on February 29, 2016. (SUF ¶ 54.) On June 21, 2016, the PTO sent Synoptek an Office Action regarding the '471 application. (Id. ¶ 57; Bali Decl. Ex. 44.) The Office Action indicated that the '471 application may be refused because of the likelihood of confusion with the mark "Synaptek" and because Synoptek had not provided acceptable specimens of use.
*833 (Bali Decl. Ex. 44.) On January 25, 2017, the PTO issued a suspension notice stating that in light of the '536 application, the '471 application was suspended until the PTO either registered or abandoned the "Synaptek" mark and because Synoptek had not submitted an acceptable specimen of record. (SUF ¶ 55; Bali Decl. 23.) The '471 mark still has not been registered. (SUF ¶ 56.)
On October 4, 2016, Synoptek filed a Petition for Cancellation of the '160 mark with the PTO, (id. ¶ 109; Schewe Decl. Ex. 53), as well as this action against Synaptek for cancellation of the '160 mark, amongst other causes of action, (Compl.).
III. LEGAL STANDARD
The Court may grant summary judgment on "each claim or defense-or the part of each claim or defense-on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. ; see also Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 249, 106 S.Ct. 2505.
Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc. , 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, Adickes v. S.H. Kress & Co. , 398 U.S. 144, 158-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." Anderson , 477 U.S. at 256, 106 S.Ct. 2505. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)-(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." Anderson , 477 U.S. at 252, 106 S.Ct. 2505.
In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable *834 inferences in its favor. Id. ; United States v. Diebold, Inc. , 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ; T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n , 809 F.2d 626, 630-31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. Eastman Kodak Co. v. Image Tech. Servs., Inc. , 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. Thornhill Pub. Co., Inc. v. GTE Corp. , 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact-including an item of damages or other relief-that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).
IV. DISCUSSION
A. Applicable Law
The Lanham Act, 15 U.S.C. § 1119, gives federal courts authority to cancel an invalid trademark registration. Petroliam Nasional Berhad v. GoDaddy.com, Inc. , 897 F.Supp.2d 856, 869 (N.D. Cal. 2012), aff'd , 737 F.3d 546 (9th Cir. 2013). Cancellation of a trademark registration is proper "when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing." Star-Kist Foods, Inc. v. P. J. Rhodes & Co. , 735 F.2d 346, 348 (9th Cir. 1984) (citation omitted) ). To establish standing, "the cancellation petitioner must plead and prove facts showing a 'real interest' in the proceedings." Hokto Kinoko Co. v. Concord Farms, Inc. , 810 F.Supp.2d 1013, 1034 (C.D. Cal. 2011), aff'd , 738 F.3d 1085 (9th Cir. 2013). Synoptek has a "real interest" in this action since it is asserting it owns the "Synoptek" mark.
"Federal courts may cancel registrations based on the same grounds that would be applied by the [PTO]," those provided by 15 U.S.C. § 1064. Petroliam Nasional Berhad , 897 F.Supp.2d at 869-70. For the first five years after registration, a trademark registration may be challenged for any reason that would have been sufficient to refuse the original registration, 15 U.S.C. § 1064(1), such as likelihood of confusion, 15 U.S.C. § 1052(d). "Once a trademark has been registered for more than five years, the grounds available to cancel the registration narrow significantly," and no longer include likelihood of confusion. Kleven v. Hereford , No. CV1302783ABAGRX, 2015 WL 4977185, at *21 (C.D. Cal. Aug. 21, 2015).
Synaptek argues that likelihood of confusion is no longer a ground for cancellation because the '160 mark has been registered since 2011. (Dkt 53 [Synaptek's Opposition, hereinafter "Opp."] at 1-2.) However, Synaptek's "Synaptek" mark has been on the Principal Register for less than five years. While the '160 mark was registered in 2011, from 2011 until 2016 the registration was for the mark "Synaptyk." During this time, the PTO denied registration of the designation "Synaptek" multiple times. Although Synaptek was able to amend the '160 mark to protect the designation "Synaptek" in the face of the PTO's denial of registration of that same designation, it is simply not accurate to say that "Synaptek" was registered since 2011. Rather, "Synaptek" has been registered only since 2016 when Synaptek successfully amended the '160 mark. Because the "Synaptek" mark has not been registered for more than five years, the likelihood of confusion is a valid basis for cancelling the '160 mark.
*835 Moreover, to permit Synaptek to grandfather "Synaptek" into an older registration through amendment, and thus escape an action for cancellation on the ground of likelihood of confusion, would not serve the purpose of the five-year limitation. As one PTO court observed:
This balancing of property rights and public interest seems to us to have resulted in a statutory scheme whereby, once a trademark owner has had a registration for five years, his property interests come to the fore, and his registration will thenceforth be safe from attack unless he makes the registration vulnerable through his own actions, or unless he was never entitled to the registration to begin with.
Consorzio Del Prosciutto Di Parma , 23 U.S.P.Q.2d 1894 (T.T.A.B. June 17, 1992). Synaptek had no property interest in "Synaptek" until 2016, and even then its property interest was questionable given the PTO's prior denials of registration for "Synaptek." See 37 C.F.R. § 2.173(c) ("Registration must still contain registrable matter. The registration as amended must still contain registrable matter, and the mark as amended must be registrable as a whole.") Finally, no person or entity had notice of the "Synaptek" mark until 2016, when the relevant certificate of registration was issued. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc. , 469 U.S. 189, 202, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) ("Registration of a mark provides constructive notice throughout the United States of the registrant's claim to ownership.") (citing 15 U.S.C. § 1072 ). Indeed, because the PTO paralegal determined that the alteration of "Synaptyk" to "Synaptek" was not a material alteration, the registration for "Synaptek" was not republished for purposes of opposition prior to the issuance of the certificate. See TMEP 1609.02(a).
B. Likelihood of Confusion
Synoptek moves for summary judgment on its cause of action for cancellation of the "Synaptek" mark on the ground that the mark "so resembles" the "Synoptek" mark "as to be likely, when used on or in connection with the goods of [Synaptek], to cause confusion." (Mot. at 11-21 [quoting 15 U.S.C. § 1052(d) ].) Synaptek argues that Synoptek has not proven that confusion is probable nor has established there is no genuine issue of material fact as to likelihood of confusion. (Opp. at 17-25.) Applying the Sleekcraft factors-as explained below-to the undisputed facts and evidence at hand, the Court finds as a matter of law that public confusion is likely between the parties' respective use of the "Synoptek" and "Synaptek" marks. Accordingly, Synoptek is entitled to summary judgment on its cancellation claim.[5]
"Under the Lanham Act, infringement lies for both registered and unregistered trademarks when the alleged infringer's use 'is likely to cause confusion, or to cause mistake, or to deceive.' " Stone Creek, Inc. v. Omnia Italian Design, Inc. , 875 F.3d 426, 431 (9th Cir. 2017) (quoting 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A) ). "Under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), the test for trademark registration uses the same 'likelihood of confusion' standard as the test for trademark infringement." Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n , 465 F.3d 1102, 1111 (9th Cir. 2006) ; see *836 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:78 (5th. ed. 2010). "Likelihood of confusion" asks whether a "reasonably prudent" marketplace consumer is "likely to be confused as to the origin of the good or service bearing one of the marks." Rearden LLC v. Rearden Commerce, Inc. , 683 F.3d 1190, 1214 (9th Cir. 2012) (citation omitted). Actionable confusion must be "probable, not simply a possibility." Murray v. Cable NBC Co. , 86 F.3d 858, 861 (9th Cir. 1996).
To determine the likelihood of consumer confusion, the Court applies the long-established factors set forth in AMF Inc. v. Sleekcraft Boats , 599 F.2d 341, 348-54 (9th Cir. 1979). The Sleekcraft factors include (1) the "similarity of the marks"; (2) the "strength of the mark" that has allegedly been infringed; (3) "evidence of actual confusion"; (4) the relatedness or "proximity" of the goods; (5) the "normal marketing channels" used by both parties; (6) the "type of goods and the degree of care likely to be exercised by the purchaser"; (7) the alleged infringer's "intent in selecting the mark"; and (8) evidence that "either party may expand his business to compete with the other." Id. The Court applies these factors "flexibly," and Synoptek "need not demonstrate that every factor weighs in its favor." Hokto Kinoko Co. , 738 F.3d at 1095-96 ; see Network Automation, Inc. v. Advanced Sys. Concepts, Inc. , 638 F.3d 1137, 1145 (9th Cir. 2011) (the Sleekcraft factors are an adaptable tool for determining consumer confusion, not a "rote checklist"); Surfvivor Media, Inc. v. Survivor Prods. , 406 F.3d 625, 631 (9th Cir. 2005) ("The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them."). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." One Indus., LLC v. Jim O'Neal Distrib., Inc. , 578 F.3d 1154, 1162 (9th Cir. 2009) (quoting Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp. , 174 F.3d 1036, 1047 (9th Cir. 1999) ). "Two particularly probative factors are the similarity of the marks and the proximity of the goods." Stone Creek , 875 F.3d at 432.
Because the determination of likelihood of confusion is "based on a non-exhaustive, multi-factor, fact-intensive inquiry," the Ninth Circuit has "cautioned against granting summary judgment in these cases." JL Beverage Co., LLC v. Jim Beam Brands Co. , 828 F.3d 1098, 1105 (9th Cir. 2016) (collecting cases). However, "summary judgment may be entered when no genuine issue of material fact exists." One Indus. , 578 F.3d at 1162 (quoting Surfvivor Media , 406 F.3d at 630 ); see Stone Creek , 875 F.3d at 436 (reversing the district court's finding of no likelihood of confusion where there was "slam-dunk evidence of a conceptually strong mark together with the use of identical marks on identical goods"). The Court will consider each Sleekcraft factor in turn.
i. Similarity of the Marks
"Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion." GoTo.com, Inc. v. Walt Disney Co. , 202 F.3d 1199, 1206 (9th Cir. 2000). The Ninth Circuit's guidelines for making this comparison are first, to consider the marks "in their entirety and as they appear in the marketplace"; second, to judge similarity "in terms of appearance, sound, and meaning"; and third, to weigh similarities "more heavily than differences." Id. (citations omitted).
The similarity between "Synoptek" and "Synaptek" is rather obvious. "With a single glance at the two [marks], one is immediately struck by their similarity." Id. The marks are virtually identical in appearance and only differ by one single letter, "O" versus "A." The marks are also essentially phonetic equivalents. The vowels *837 "A" and "O" often sound alike, such as in "swap" and "stop," and thus can create words that are phonetic equivalents.[6] Numerous courts have found a likelihood of confusion where the two marks were phonetic equivalents and had only a one or two letter difference. See, e.g. , JouJou Designs, Inc. v. JOJO Ligne Internationale, Inc. , 821 F.Supp. 1347, 1354 (N.D. Cal. 1992) (finding that the JOUJOU and JOJO marks for women's clothing were "substantially similar both in pronunciation and usage"); In re Viterra Inc. , 671 F.3d 1358, 1367 (Fed. Cir. 2012) (holding that "any minor differences in the sound of [X-Seed and XCEED marks for agricultural seeds] may go undetected by consumers and, therefore, would not be sufficient to distinguish the marks"). Indeed, the PTO denied registration of the "Synaptek" mark four times in large part because it found that "Synaptek" and "Synoptek" were phonetic equivalents and similar in appearance.
Synaptek makes three arguments in an attempt to circumvent the similarity of the marks. (Opp. at 17-18.) First, Synaptek offers an excruciatingly technical explanation of the correct pronunciation of each word.[7] However, it is well established that notwithstanding the rules of phonetics, "[t]here is no correct pronunciation of a trademark that is not a recognized word." StonCor Grp., Inc. v. Specialty Coatings, Inc. , 759 F.3d 1327, 1331-32 (Fed. Cir. 2014). Second, Synaptek explains that the marks evoke different "connotative meanings," but as the Ninth Circuit has held, there is similarity of meaning between two phonetically equivalent, made-up words because "[n]either literally means anything, and to the extent the words suggest [a specific definition], they do so equally." Dreamwerks Prod. Grp., Inc. v. SKG Studio , 142 F.3d 1127, 1131 (9th Cir. 1998) (holding that there was "perfect similarity of sound" and meaning with "Dreamwerks" and "DreamWorks" and noting that "a perceptive consumer who does notice the 'e' and lower-case 'w' in Dreamwerks might shrug off the difference").
Third, Synaptek argues that the two marks are displayed in different ways, "using contrasting colors and shapes of the related logos." (Opp. at 18.) However, both the "Synaptek" and "Synoptek" marks are registered as word marks without any design elements, so any differences in how the marks are displayed is of limited significance. "Similarity in either form, spelling or sound alone may be sufficient to *838 support a finding of likelihood of confusion." Interstate Brands Corp. , 53 U.S.P.Q.2d 1910 (T.T.A.B. Jan. 28, 2000) (finding that the marks "HOHOs" and "YO-YO'S" on similar snack cakes were "highly similar in sound" and could "certainly lead to confusion," independent of the products' packaging). In any event, "in a composite mark comprising a design and words, the verbal portion of the mark is the one most likely to indicate the origin of the goods to which it is affixed." CBS Inc. v. Morrow , 708 F.2d 1579, 1581-82 (Fed. Cir. 1983) ; see Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc. , 796 F.Supp.2d 458, 465 (S.D.N.Y. 2011) ("While a composite mark (consisting of both a word element and a design element) must be considered in its entirety, trademark law recognizes that the word portion is often more likely to be impressed upon a purchaser's memory because it is the word that purchasers use to request the goods and/or services."). The striking similarity of appearance and sound in the parties' marks here outweighs differences in how the marks may be presented in the parties' advertising. Because "Synaptek" and "Synoptek" are virtually indistinguishable in both sound and appearance, the similarity of the marks weighs heavily in favor of finding a likelihood of consumer confusion.
ii. Proximity of the Parties' Services
"Related goods (or services) are those 'which would be reasonably thought by the buying public to come from the same source if sold under the same mark.' " Rearden , 683 F.3d at 1212 (quoting Sleekcraft , 599 F.2d at 348 n.10 ). Synoptek "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor." Id. Proximity of the parties' services exists where they are (1) complementary, (2) sold to the same class of purchasers, or (3) are similar in use or function. Sleekcraft , 599 F.2d at 350 (citations omitted). "Complementary products, or services, are particularly vulnerable to confusion." Id.
Both parties offer IT and other computing services. The parties offer many of the same specific services, such as IT operations, IT program management, application management or development, and cloud services. Moreover, both marks are registered in International Class 42 for these similar services. The PTO found that the parties' services were "identical in part, and otherwise closely related" each time it denied Synaptek's application to register "Synaptek." Synaptek disputes Synoptek's characterization of its services, but Synoptek cites to Synaptek's own marketing materials or PTO filings as evidence of what services Synaptek provides. (See, e.g. , SUF ¶¶ 20, 26.) Moreover, Synaptek's Rule 30(b)(6) witness testified that Synaptek provides these and similar services. (Dkt. 59 [Synoptek's Reply, hereinafter "Reply"] at 11-13; Dkt. 60-1 Ex. A [Deposition Transcript of David Gauldfeldt] 92-97.) Because the parties offer identical and related services to their consumers, this factor weighs heavily in favor of finding a likelihood of consumer confusion.
iii. Strength of the SYNOPTEK Mark
To determine a mark's strength, it is classified in one of the following four groups, listed in ascending order of strength: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. Two Pesos, Inc. v. Taco Cabana, Inc. , 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). The stronger the mark, the more protection it is afforded. Sleekcraft , 599 F.2d at 349. The weaker the mark, the less protection it is afforded. Id. Synoptek's mark is "highly arbitrary" and does not exist in the English language. Thus, Synoptek's mark is strong. See *839 Entrepreneur Media, Inc. v. Smith , 279 F.3d 1135, 1141 (9th Cir. 2002) ("The strongest marks-that is, those which receive the maximum trademark protection-are 'arbitrary' or 'fanciful.' ") (citation omitted). Synaptek does not dispute the strength of Synoptek's mark. (See generally Opp.) This factor also weighs heavily in favor of finding a likelihood of confusion.
iv. Evidence of Actual Confusion
Evidence of actual consumer confusion "is not necessary for a finding of likelihood of confusion, but it bears on the inquiry and is particularly potent." Stone Creek , 875 F.3d at 433 (citing Sleekcraft , 599 F.2d at 352-53 ). "The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." Brookfield , 174 F.3d at 1050 (emphasis in original). Synoptek has provided no evidence of actual consumer confusion. (Mot. at 20.)[8] Accordingly, this factor weighs against a finding of a likelihood of consumer confusion. See One Indus. , 578 F.3d at 1163 (determining that a lack of evidence of actual confusion weighed "against a finding of a likelihood of confusion").
v. Marketing Channels
Advertising, the existence of direct competition, and retail distribution are considered when addressing whether the parties use similar marketing channels. See e.g. , Nutri/System, Inc. v. Con-Stan Indus., Inc. , 809 F.2d 601, 606 (9th Cir. 1987). A finding that the parties advertise or distribute their products differently indicates a lesser likelihood of confusion. Id. (finding that defendant's advertisements in entertainment industry trade publications, mailers to advertising agencies, and contacts made by staff, were dissimilar to plaintiff's marketing of its records through radio and print advertising directed at heavy metal fans); see also Glow Indus., Inc. v. Lopez , 252 F.Supp.2d 962, 1000 (C.D. Cal. 2002) ("some degree of overlap must be present before the factor favors a finding of a likelihood of confusion") (citing Frehling Enters., Inc. v. Int'l. Select Group , 192 F.3d 1330, 1339 (11th Cir. 1999) ).
Both parties use advertising, press releases, word-of-mouth, and print advertising to advertise their similar services. Synoptek focuses, however, on Synaptek's use of its website and internet presence to advertise its services. (Mot. at 18-19; Reply at 13-14.) Synaptek disputes that its website is used for sales, and contends it only seeks clients through the competitive bidding process for government contracts. (Opp. at 22-23.) While the Court agrees that Synaptek's website provides extensive information about the company's services, there is no evidence that the website generates sales or is intended to generate sales. "Some use of the Internet for marketing, however, does not alone and as a matter of law constitute overlapping marketing channels." Entrepreneur Media , 279 F.3d at 1151. The Ninth Circuit has made clear that the "proper inquiry" when both parties use Internet-based marketing is "whether both parties use the Web as a substantial marketing and advertising channel, whether the parties marks are utilized in conjunction with Web-based products, and whether the parties' marketing channels overlap in any other way." Id. at 1151-52 (internal quotations and citations omitted).
While both parties have an Internet presence, on the current record there is no *840 evidence whether either parties' use of the Internet is significant enough to be "substantial." Moreover, while the parties' use other similar advertising media, it is unclear how much the marketing channels overlap. Synaptek has presented evidence that it targets government agencies and bodies, whereas Synoptek seeks to sell its services to both commercial and government entities. See ids="9398690" index="97" url="https://cite.case.law/f3d/279/1135/#p1141">id. (holding that this factor did not weigh in favor of granting summary judgment because the parties' marketing channels did not "overlap to any significant degree" where the parties targeted different and separate audiences). Because the overlap between the parties' marketing channels is not substantial, this factor only slightly favors finding a likelihood of consumer confusion. See Surfvivor Media , 406 F.3d at 633-34 (holding that a "minor overlap" of distribution channels "slightly favors" a finding of likelihood of confusion).
vi. Degree of Consumer Care
"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." Rearden , 683 F.3d at 1209 (emphasis added); see Sleekcraft , 599 F.2d at 353. "What is expected of this reasonably prudent consumer depends on the circumstances." Brookfield , 174 F.3d at 1060. While expert buyers and buyers purchasing expensive items are expected to be "more discerning," courts recognize that "confusion may often be likely even in the case of expensive goods sold to discerning customers." Id. While the parties' consumers are of great relevance to the Court's inquiry, likely confusion of potential consumers, as well as vendors, suppliers, potential employees, and investors, are also relevant. Rearden , 683 F.3d at 1214 ; see Surfvivor Media , 406 F.3d at 633 ("[i]n analyzing this ["evidence of actual confusion" Sleekcraft ] factor, we may consider whether merchants and nonpurchasing members of the public, as well as actual consumers, were confused"); see also 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:5 (5th ed. 2018).
Synoptek argues that consumers of IT services hire IT consultants because they lack expertise in the field, therefore both parties' consumers will be relatively unsophisticated and more likely to be confused by the parties' similar marks. (Mot. at 19.)[9] In its Reply, Synoptek *841 expands the relevant class of consumers to include its vendors and partners, such as Microsoft and Oracle, who also partner with Synaptek. (Reply at 17-18.) Synaptek argues that its consumers are highly sophisticated federal contracting officers and contractors who evaluate companies through a complex government contracting process that prevents confusion. (Opp. at 20-22.) But even if Synaptek's consumers are highly sophisticated and able to discern the difference between the parties' marks, Synaptek's argument does not dispute that Synoptek's consumers, vendors, and partners are likely to be confused by the similar marks connected with similar services. Because Synoptek's consumers, vendors, and partners are likely to be confused by the parties' similar marks, this factor slightly favors finding a likelihood of consumer confusion.
vii. Defendant's Intent in Adopting the " Synaptek " Mark
"[W]hen the alleged infringer intended to deceive customers, [the Court] infer[s] that its conscious attempt to confuse did in fact result in confusion." Stone Creek , 875 F.3d at 434 (citing Playboy Enters., Inc. v. Netscape Commc'ns Corp. , 354 F.3d 1020, 1028 (9th Cir. 2004) ). "Recognizing the difficulty of collecting evidence of a party's motive, [the Ninth Circuit has] held that choosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive." Id. (citation omitted).
Although Synaptek has presented evidence that it was unaware of the Synoptek mark when it selected its company name in 2008, Synoptek argues that Synaptek knew about the "Synoptek" mark when it repeatedly applied to register "Synaptek" and ultimately amended the '160 mark to protect "Synaptek." Indeed, after the PTO's initial denial of the '536 application which explicitly found a likelihood of confusion with the "Synoptek" mark, Synaptek had constructive notice of the mark. While the Court may draw an inference that Synaptek intended to deceive consumers when it registered the "Synaptek" mark, Synoptek has provided no direct evidence of such an intent. See Entrepreneur Media , 279 F.3d at 1148 ("The inference from knowledge and similarity, however, does not add much in answering the ultimate question here, likelihood of confusion, as the inference provides no direct evidence of [the defendant's] judgment concerning likely confusion.") Because Synaptek had constructive or actual knowledge of the "Synoptek" mark before it successfully amended the '160 mark, this factor weighs only slightly in favor of finding a likelihood of confusion.
viii. Likelihood of Expansion
There is a need for "a strong possibility of expansion into competing markets" for this factor to "weigh[ ] in favor of a finding" a likelihood of confusion. M2 Software, Inc. v. Madacy Entm't , 421 F.3d 1073, 1085 (9th Cir. 2005) (citation omitted). Synoptek argues that it is "inevitable" that it will expand into Synaptek's market because both parties already service government agencies. (Mot. at 19-20.) However, Synoptek has provided no evidence of real, present plans to compete with Synaptek for small business set-asides through the federal government. (Opp. at 23.) Synoptek's lack of direct evidence demonstrating expansion into Synaptek's market undermines its claim that there is a strong possibility of it expanding *842 into competing markets. Thus, this factor does not favor a finding of likelihood of consumer confusion.
V. CONCLUSION
In determining whether a likelihood of confusion exists with the parties' marks, the Court does "not merely count beans or tally points." Stone Creek , 875 F.3d at 431. Here, the factors of the similarity of the marks, the proximity of the goods, and the strength of Synoptek's mark, are particularly probative of a likelihood of confusion. Indeed, based on the first two factors alone, the PTO denied registration of the "Synaptek" mark four times. The remaining factors do not "displace the powerful case of likelihood of confusion," and on the whole strengthen the likelihood of confusion. Id. at 432. Thus, the Court finds that there is a likelihood of confusion between the parties' marks as a matter of law. Accordingly, Synoptek's motion for partial summary judgment to cancel Synaptek's '160 trademark is GRANTED.

Synoptek's services include IT service solutions, technical support, strategic planning, systems and software engineering, design and development, integration, implementation support, architectural development, data migration, enterprise architecture, training, enterprise network engineering, cyber security, and operations and maintenance. (SUF ¶ 2.)

The '720 mark is registered in International Class 42 for "Computer consultation; Computer disaster recovery planning; Computer network design for others; Computer software consultation; Consulting services in the field of design, selection, implementation and use of computer hardware and software systems for others; Customization of computer hardware and software; Database development services; Design, development and implementation of software; Information technology consultation; Installation of computer software; Technical support services, namely, troubleshooting of computer hardware and software problems; Technical writing for others." (SUF ¶ 11.)

Synaptek's services also include IT service solutions, technical support, strategic planning, systems and software engineering, design and development, integration, implementation support, architectural development, data migration, enterprise architecture, training, enterprise network engineering, cyber security, and operations and maintenance. (SUF ¶ 20.)

The '160 mark is registered in International Class 42 for "Information technology consulting and information technology project management services, namely, computer software development and design, web site development for others, computer systems integration services, technical support, namely, monitoring of network systems, design and development of wireless communication systems for transmission and reception of voice, and planning, design and management of information technology systems." (SUF ¶ 22.)

Because the Court finds that public confusion is likely between the parties' respective marks, it is unnecessary to address Synoptek's argument that Synaptek fraudulently obtained a Section 7 amendment of the '160 mark as a ground for cancellation. (Mot. at 21-25.)

Contrary to its present argument that a single vowel difference renders the two marks dissimilar, Synaptek argued that "Synaptek" and "Synaptyk" were phonetic equivalents when it petitioned for a Section 7 Amendment to the '160 mark. (Bali Decl. Ex. 20.)

Synaptek has provided the expert testimony of Ronald R. Butters Ph.D., which details Dr. Butters' opinion on the linguistic differences between "Synoptek" and "Synaptek." (Dkt. 55.) Synoptek argues that such expert testimony is irrelevant to the Court's analysis of how a "reasonably prudent consumer" would view or hear the parties' marks. (Reply at 8-10.) In Chesebrough-Pond's, Inc. v. Faberge, Inc. , 666 F.2d 393 (9th Cir. 1982), the Ninth Circuit held that there was no genuine issue of fact concerning "matters of common knowledge and experience" required to compare "Match" with "Macho." Id. at 398. The court also held that it was "clearly within the discretion of the trial court" to exclude an expert opinion on the linguistic differences between the two words, and it would not be error "to grant a summary judgment even though the expert's conclusion differed from that of the court."Id. Here, the similarity of appearance and sound between the parties' marks is obvious, and a reasonably prudent consumer would not apply linguistic expertise to arrive at that conclusion. Thus, Dr. Butter's testimony is not of any real assistance or relevance to the Court's inquiry, as "[t]he similarity or dissimilarity of these two words is a matter easily evaluated by laymen within the realm of their common knowledge and experience." Id.

Synoptek's argument that Synaptek "presents no direct evidence of an absence of actual confusion" is misplaced. (Reply at 15.) It is Synoptek's burden to prove each of the Sleekcraft factors, not Synaptek's burden.

Synoptek alleges "initial interest confusion" will occur when its consumers search for Synoptek's services online, as they may be diverted to Synaptek's website and experience confusion based on the similarity of the marks and the services the companies provide. (Reply at 15-18.) Initial interest confusion involves "the use of another's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement." Brookfield , 174 F.3d at 1062 (internal quotation and citation omitted). The Ninth Circuit has applied the initial interest confusion theory to cases involving Internet metatags, ids="11626525" index="116" url="https://cite.case.law/f3d/174/1036/#p1047">id. , search terms, Network Automation , 638 F.3d at 1149, and the display of search results, Multi Time Mach., Inc. v. Amazon.com, Inc. , 804 F.3d 930, 937 (9th Cir. 2015). More recent cases, such as Network Automation , have treated "initial interest confusion" as a consideration under the Sleekcraft factor of degree of consumer care. In Network Automation , the Ninth Circuit considered how online consumers have become more sophisticated, "are accustomed to [ ] exploration by trial and error," and "fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary." Network Automation , 638 F.3d at 1152-53 (citation omitted). In light of this reality, the Ninth Circuit concluded that it was improper for the district court to conclude that initial interest confusion weighed in favor of granting summary judgment. Id. at 1053. Here, Synoptek only speculates that such diversion will occur, without any evidence regarding consumers actually being diverted. In light of the Ninth Circuit's treatment of initial interest confusion and the lack of evidence presented here, the Court gives little weight to Synoptek's hypothesis that its consumers will be diverted to Synaptek's website.